**UNITED STATES of America,**
**Plaintiff-Appellee**

v.

**Jan Alvord WILKERSON, Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee**

v.

**Ransom John GRAY, Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee**

v.

**Charles Lee BURNETTE, Defendant-Appellant.**

**Nos. 71–1567–71–1569.**

United States Court of Appeals,
Sixth Circuit.

March 15, 1972.

Francis Breazeale (Court Appointed), Chattanooga, Tenn., for Jan Alvord Wilkerson.

Thomas A. Williams (Court Appointed), Chattanooga, Tenn., for Ransom John Gray.

John R. Seymour (Court Appointed), Chattanooga, Tenn., for Charles Lee Burnette; Stophel, Caldwell & Heggie, Chattanooga, Tenn., of counsel.

George H. Garrett, Chattanooga, Tenn. (John L. Bowers, Jr., U. S. Atty., Jerry Foster, Asst. U. S. Atty., Chattanooga, Tenn., on the brief), for appellee.

Before WEICK, EDWARDS, and McCREE, Circuit Judges.

PER CURIAM.

Defendants appeal jury convictions of armed bank robbery in violation of 18 U.S.C. §§ 2, 2113(a) and (d), for which Burnette was sentenced to twenty years, Gray to eighteen years, and Wilkerson to fourteen years. We find no reversible error with respect to any of the contentions advanced by appellants and affirm the convictions.

At trial, overwhelming evidence of guilt was introduced. In addition to the in-court identification of Burnette and Gray by several bank employees, there was evidence that the automobile used as the "get-away car" was rented by Wilkerson and contained the fingerprints of Burnette and Gray. Photographs from bank surveillance cameras were also introduced into evidence, as was Burnette's confession. Another witness, a

Wells Fargo security guard, testified that Wilkerson told him of her role in the robbery as driver of the get-away car.

Burnette presents four assignments of error: the court erred in overruling his motion to suppress his confession; the court erred in refusing to sever his trial from that of Gray; the court erred in overruling his motion for a mistrial based upon the reading of an alleged alias of his to the jury after the court had ordered the alias stricken from the indictment; and the court erred in refusing to restrict the Government's cross-examination of him, if he should elect to take the stand, to exclude reference to prior convictions.

With respect to the first contention, we hold that the District Court's conclusion that "the evidence established clearly that the defendant was advised properly and fully of his rights, that he gave the statement freely and understandingly" is not erroneous. We agree with the District Court that Burnette was adequately informed of his rights; that it was Burnette who initiated the interview; and that the confession was made freely and voluntarily. We find no coercion or deception on the part of the FBI agent to induce Burnette to confess.

The indictment upon which Burnette was charged was brought against "Charles Lee Burnette alias Ricky Burnette." Upon motion by Burnette before trial, the court ordered this alias stricken from the indictment. Nevertheless, the United States attorney in his opening statement read the alias to the jury in his reading of the indictment, and included in his closing argument the assertion that people with nothing to hide do not use aliases. (The indictments of Gray and Wilkerson also contained alleged aliases, but the court did not strike these.) We strongly disapprove the practice of including aliases in indictments. As the court stated in Petrilli v. United States, 129 F.2d 101, 104 (8th Cir. 1942), cert. denied, 317 U. S. 657, 63 S.Ct. 55, 87 L.Ed. 528 (1942), "The preliminary reading of the aliases in an indictment is not a practice which should be encouraged in an ordinary criminal prosecution, but rather one which should be curbed." Only when proof of an alias is relevant to identifying the defendant should a court allow its inclusion in the indictment and its subsequent introduction at trial. Here, the Government did not offer proof of the aliases of Gray and Wilkerson, and it appears that the principal use to which the aliases were put was to indicate to the jury that people who use aliases are inherently suspect. However, in view of the strength of the evidence against the defendants, we hold that neither the error with respect to Burnette's alias nor the prejudicial effect of the Government's references to all the aliases warrants reversal here.

With respect to Burnette's remaining assignments of error, we find no abuse of discretion in the District Court's refusal to grant a severance and in its refusal to preclude the Government from cross-examining Burnette concerning his prior convictions.

We deem only one of the errors urged by Gray to merit extended consideration. Gray contends that the in-court identification of him by certain bank employees was impermissibly suggested by means of the Government attorneys' "conducting rehearsals, lineups, and coaching sessions" with the witnesses. He asserts that each witness "refreshed his memory" by conferring with the United States attorneys before testifying; that witness Sandra Green sat in the courtroom during a hearing on a pretrial motion on the day before trial and thus was able to view the defendant; that other witnesses sat in the courtroom during the voir dire of the jury, which amounted to a "walk-through" that afforded the witnesses an opportunity to view the defendants before testifying; that one Government witness had been arrested the day before trial and threatened with detention without bond; that a policeman had stated to certain wit-

nesses "that he could convict all of the defendants"; and that the witnesses had discussed their testimony among themselves.

■ Our review of the record convinces us that the in-court identifications were not tainted by impermissibly suggestive procedures. Not all the witnesses who had observed the defendants in the courtroom during the voir dire were able to identify the defendants, and those who did identify one or more of the defendants were subjected to vigorous cross-examination. All witnesses in the latter group maintained that their in-court identifications were based upon their observations of the defendants during the robbery. They admitted that they had been interviewed by Government attorneys before trial, but denied that they had been coached or instructed or told to view the defendants in the courtroom. They also denied comparing their testimony among themselves. Sandra Green, who viewed the defendants during a pretrial hearing, was not able to identify Gray at trial. And the record shows that Carol Landolt, who was arrested before trial as a Government witness, was allowed to sign a $500 personal bond, and was arrested only because she had evaded the service of a subpoena. She was cross-examined by defense counsel at trial concerning the effect of the arrest on her testimony. Further, at a hearing held out of the presence of the jury, defense counsel could not cite a single instance of impropriety or any falsehood in the witness' testimony. The District Court found no evidence of impropriety or intimidation of this witness, and we hold that the record amply supports this determination. We determine also that in the circumstances of this case, the procedures employed by the Government, including allowing Government witnesses to view the defendants during voir dire—the only "suggestive" procedure mentioned by appellant that is substantiated by the record—were not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable mis-

identification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). See United States v. Black, 412 F.2d 687 (6th Cir. 1969), cert. denied, 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970); Pettett v. United States, 434 F.2d 105 (6th Cir. 1970).

■ However, we express our disapproval of the practice of permitting prospective Government witnesses to remain in the courtroom during the voir dire in cases where identification is an issue and defendants are pointed out to prospective jurors. Such a practice has great potential for injecting unfair prejudice into the trial, and there is no countervailing consideration to justify it. It appears that the court, following the voir dire, determined whether the parties wanted the witnesses to be excluded from the courtroom during the trial. We see no reason why this determination could not have been made before the voir dire began and the defendants were brought into the courtroom.

We have considered Gray's contentions that the court erred in denying his motions for severance and for production of evidence favorable to him, and we find no error in these dispositions. We also find no reversible error in the court's denial of Gray's pretrial motion to strike an alias from his indictment, although, as we have observed, the wiser course would have been to grant this motion in the absence of a showing of particular need on the part of the Government.

Wilkerson contends that the court erred in refusing to strike the testimony of Edward Lowery, a security guard with whom she lived after the robbery and to whom she confessed her role in the robbery. Before trial, Wilkerson moved, pursuant to Fed.R.Crim.P. 16 (a), for the production of "any relevant written or recorded statements or confessions made by [her], or copies thereof, within the possession, custody, or control of the government." At the time of this motion, the Government had

in its possession a memorandum prepared by an FBI agent that embodied the substance of an interview of Lowery conducted by the agent. This memorandum, in turn, reflected Lowery's recollection of what Wilkerson had told him. The Government, however, responded to Wilkerson's discovery motion by stating that "to the best of its knowledge, information and belief no statement or confession was given by defendant." Lowery's testimony at trial consisted substantially of the same information he had furnished to the FBI before trial concerning the statements made to him by Wilkerson. Accordingly, following his testimony, defense counsel moved for the production of and received a copy of the FBI memorandum of the Lowery interview pursuant to the Jencks Act, 18 U.S.C. § 3500.

It is clear that Rule 16(a) does not contemplate the pretrial discovery by defense counsel of statements made to the Government by prospective Government witnesses. Such statements are producible, if at all, under the provisions of the Jencks Act. *See, e.g.,* Sendejas v. United States, 428 F.2d 1040, 1046 (9th Cir. 1970), cert. denied, 400 U.S. 879, 91 S.Ct. 127, 27 L.Ed.2d 116 (1970); United States v. Sklaroff, 323 F.Supp. 296, 309 (S.D.Fla.1971); Fed.R. Crim.P. 16(b). However, appellant argues that this rule is not applicable when the statement of the Government witness embodies a "confession" made to the witness by the defendant. In such a case, it is argued, the witness' statement satisfies the requirement of Rule 16(a) that the document be a "written or recorded [statement or confession] made by the defendant . . . within the possession . . . of the Government." We disagree. As the Notes of the Advisory Committee on the Federal Rules of Criminal Procedure suggest, Rule 16(a) was prompted, at least in part, by the statement of the Supreme Court in Cicenia v. Lagay, 357 U.S. 504, 511, 78 S. Ct. 1297, 2 L.Ed.2d 1523 (1958), that it would be the "better practice" for the prosecution to comply with defense requests to inspect confessions made by the accused to law enforcement agents. This is because inspection of a confession that the prosecution intends to use at trial allows the accused the opportunity more fully to prepare defenses such as the involuntariness of the confession, the omission of exculpatory facts from the confession by the prosecution, or the presence of prejudicial material in the confession.

These considerations, however, are not nearly as persuasive when the "confession" consists of statements made by the accused to a third person, who then decides to testify about these statements at trial. In this case, the defendant's right to challenge the witness is adequately protected by the Jencks Act. Moreover, we believe that the language of both Rule 16(a) and of the Jencks Act indicates that the focus of this discovery rule is on direct communications between a witness and the Government.

We hold, therefore, that the court did not err in refusing to strike the testimony of Lowery since the memorandum of Lowery's pretrial statement was not discoverable by the defendant until Lowery had testified upon direct examination at trial. *See* United States v. Zirpolo, 288 F.Supp. 993, 1019 (D.N. J.1968). However, we believe that the Government's response in this case to Wilkerson's motion to inspect was inadequate and lacking in candor. The better response would have been to say that the Government did have a statement from a witness who was to be called to testify, and that this statement concerned admissions made by the defendant to the witness at a previous time, but that the statement of the witness, in the Government's view, was not producible under Rule 16(a). This procedure would have afforded the District Court the opportunity to rule on Wilkerson's motion to inspect. The Government was not justified in assuming that the statement was not producible and thereby usurping the decisional role of the District Judge.

With respect to Wilkerson's challenge of the adequacy of the court's response to the jury's query concerning the law of aiding and abetting, we find no error in the court's decision to repeat its instruction in full. The instruction stated the law properly and included reference to the point upon which the jury requested information.

Affirmed.