Charles E. ROSSER, Appellant,

v.

UNITED STATES, Appellee.

No. 10329.

District of Columbia Court of Appeals.

Argued Sept. 12, 1977.

Decided Dec. 12, 1977.

Richard T. Tomar, Washington, D. C., for appellant.

Edward D. Ross, Jr., Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and William D. Pease, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and MACK and FERREN, Associate Judges.

FERREN, Associate Judge:

Defendant Charles Rosser was convicted of assault with intent to commit robbery, D.C.Code 1973, § 22–501, and sentenced to imprisonment for two to six years. He seeks reversal primarily on the ground that the prosecutor allegedly tricked him by failing to produce his statements to the police, pursuant to Super.Ct.Cr.R. 16 and the Jencks Act, 18 U.S.C. § 3500 (1970), and then impeaching him with those statements after he had elected to take the stand. We reverse and remand for a new trial.

## I. The Facts

On July 1, 1975, at 6:00 a. m., James Cavender, a high school senior from a small town in upstate New York, arrived at the Greyhound bus station in Washington, D. C., after an eleven-hour trip from Albany. His schedule called for a two-hour layover

before resuming his trip to Furman, Alabama, to visit his father. He went to the washroom at the station where he met the defendant, Charles Rosser, who claimed to be at the station to meet his mother due to arrive on a 7:15 a. m. bus.

The prosecutor asserts that Cavender left the station with Rosser to see the sights of Washington. As the defense would have it, Cavender joined Rosser to make a marijuana purchase. In any event, all agree that in the vicinity of Seventh and N Streets, N.W., defendant Rosser led Cavender through an alley to the rear of an abandoned building. A scuffle ensued, during which Rosser allegedly knocked off Cavender's spectacles and managed to get a hand into the pocket where Cavender kept his wallet (although Rosser apparently failed to extract it). Cavender dropped his backpack and suitcase, freed himself from Rosser, and ran out to the street at the end of the alley, where he flagged down a police cruiser. The driver, Officer Michael Clay, then arrested Rosser, who had appeared on the street shouting after Cavender.

The grand jury indicted Rosser on July 16, 1975, on one count of assault with intent to commit robbery, D.C.Code 1973, § 22–501. As the proceedings below make clear, the grand jury transcript is central to this appeal.

II. *The Proceedings Below*

Defendant apparently made no statements to the police at the time of arrest. As Officer Clay was doing the paperwork at the substation, however, he conversed with defendant as follows, according to the final portion (pages 9–10) of the officer's grand jury testimony:

[The Prosecutor]:

Q. Did Mr. Rosser say anything to you about what had occurred between him and Mr. Cavender?

A. Yes, sir, he did.

Q. What was that?

A. He said he met Mr. Rosser at the bus station at 12th and New York and a conversation ensued and some kind of narcotics or dope was mentioned; and

Mr. Cavender followed Mr. Rosser up to the 1600 block of 7th St. N.W. and into the rear of that particular address, where Mr. Rosser apparently attacked—

Q. Is that what Mr. Cavender told you?

A. Yes.

Q. *What did Mr. Rosser tell you about what happened?*

A. *Mr. Rosser told me he was a con man and he tried to con Mr. Cavender.*

[The Prosecutor]: Are there any questions for Officer Clay?

BY THE JURORS:

Q. *What was the game he was going to play on him?*

A. *A con man acts as though—he doesn't beat you on the head and take your money. He talks you out of it.*

Q. The complainant says there was narcotics mentioned. Was there any found on Mr. Rosser?

A. No, sir.

Q. Was there any found on Cavender?

A. No, sir.

[The Prosecutor]: Are there any other questions?

(No response.)

[The Prosecutor]: Thank you.

(Witness excused.) [Emphasis added.]

There were three critical events during the course of the proceedings with respect to this interchange between Clay and Rosser. First, at a status hearing on September 25, 1975, the following colloquy took place:

THE COURT: Have you ascertained whether or not your client has made any statements?

[DEFENSE COUNSEL]: I'm not certain at this time, Your Honor. I think he did but I'm not certain.

THE COURT: Are there any statements, Mr. [Prosecutor]?

[PROSECUTOR]: Only as to an exculpatory nature.

THE COURT: Oral or written?

[PROSECUTOR]: Oral, Your Honor.

Defense counsel did not request the statements at that time.

Second, at the beginning of the trial on October 24, 1975, in response to defense counsel's request for "Jencks material," the prosecutor delivered a packet containing several police reports plus eight and a fraction pages of the grand jury transcript. This transcript included testimony by Officer Clay as to the circumstances of the arrest, but neither the transcript nor the police reports referred to statements by the defendant.

Finally, near the end of the trial, after defendant had testified and denied during cross-examination that he had ever admitted to Officer Clay that he was a "con man," the prosecutor gave defense counsel one and a fraction more pages of grand jury testimony by Officer Clay—the portion containing defendant's "con man" admission quoted above.

Over defense counsel's objection, the trial court permitted the prosecutor to call Officer Clay as a rebuttal witness to impeach defendant with this admission. Immediately after the officer had testified, defense counsel moved to dismiss because of the government's failure to include the police officer's complete grand jury testimony in the packet of materials delivered prior to trial. The court denied the motion.

After a day-long trial at which only the complainant (Cavender), the arresting officer (Clay), and the defendant (Rosser) testified, the jury found the defendant guilty.

### III. *Principal Question Presented*

■ This appeal presents primarily one question:[1] did the trial court err in declining to impose sanctions for the government's failure to produce Officer Clay's complete grand jury testimony prior to defendant's taking the stand? In order to answer this question, we have to deal with a subject of more general concern, namely the rules and standards of conduct governing the informal discovery process in criminal cases. What is defense counsel's burden to specify the type of material requested? What is the corresponding duty of the prosecutor to make clear what is, and is not, produced?

### IV. *The Grand Jury Testimony*

Defendant contends that the prosecutor, before trial, used trickery to deprive him of two fundamental rights: his right under Super.Ct.Cr.R. 16 to discover any statement he allegedly had made to the police, and his right under the Jencks Act, 18 U.S.C. § 3500 (1970), to timely examination of the grand jury testimony of the government's witnesses. He claims that the prosecutor's tactic of producing before trial what appeared to be Officer Clay's entire grand jury testimony intentionally misled defense counsel into believing there was no need to make the customary motion for production of additional grand jury material after Officer Clay had testified on direct examination. *See* 18 U.S.C. § 3500(b) (1970). More particularly, defendant had no reason to believe that there might be additional transcript pages containing grand jury testimony by Officer Clay, including statements by defendant, that the prosecutor could use for impeachment.[2]

The government replies that a careful examination of the record will show that the prosecution did not mislead the defense. The government stresses, moreover, that

---

1. Defendant also claims on appeal that the trial court erred in failing to grant a limiting instruction with respect to defendant's admitted involvement with marijuana—an issue we need not and accordingly do not reach. Nor do we decide defendant's contention that the prospective jury panel was too heavily weighted with women, in violation of the Sixth Amendment, although we point out that such a claim would require a showing of systematic exclusion of men from the panel. *See Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *cf. Peters v. Kiff*, 407 U.S. 493, 92 S.Ct.

2163, 33 L.Ed.2d 83 (1972). *Defendant's final assertion, that the trial court's voir dire* procedure was constitutionally defective, has no merit. *Taylor v. United States*, D.C.App., 372 A.2d 1009 (1977).

2. Given one's emotional distress at the time of arrest, a defendant cannot always be expected to recall what he or she may have said, let alone know what the police may have recorded. *See United States v. Lewis*, 167 U.S.App.D.C. 232, 236, 511 F.2d 798, 802 (1975).

even if its conduct had been misleading, its tactic was legally harmless because defendant had no right, under Criminal Rule 16 or the Jencks Act, to see the withheld portion of the grand jury transcript any sooner than the prosecutor turned it over.

Under the circumstances, the most appropriate way to analyze this case is to consider, first, whether defendant was entitled to the statements; second, whether defendant made the requisite efforts to discover them; and third, whether the government's actions so misled defendant, and were so prejudicial to his case, that reversal and a new trial are required.

### A. The Defendant's Right to His Written or Recorded Statements Under Criminal Rule 16

Defendant claims a right to discovery of his statements to the police pursuant to Super.Ct.Cr.R. 16. In 1975, at the time of indictment and trial, the relevant paragraphs of that Rule, tracking Federal Criminal Rule 16, provided as follows (with emphasis added):

(a) . . . Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph any relevant (1) *written or recorded statements or confessions made by the defendant,* or copies thereof within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, . . . and (3) recorded testimony of the defendant before [the] grand jury.

(b) . . . Except as provided in subdivision (a)(2) [with respect to results of examinations, tests, and experiments], this rule does not authorize the discovery or inspection of . . statements made by government witnesses (other than defendant) to

agents of the government *except as provided in 18 U.S.C. § 3500 (1970) [The Jencks Act].*

◼︎ The first question is whether Officer Clay's grand jury testimony, reduced to writing in the transcript, was discoverable under Rule 16(a)(1) as a "written or recorded statements [or confession] made by the defendant" that he was a "con man." Or, instead, must the testimony be characterized solely as the recorded statement of Officer Clay? If the latter interpretation were correct, discovery of the officer's testimony would be limited by Rule 16(b) to the provisions of the Jencks Act, 18 U.S.C. § 3500 (1970), precluding discovery of a statement by a government witness, other than the defendant, until after the "witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a) (1970).[3]

The courts are divided. Three U.S. Circuit Courts of Appeal have held that "incorporation" or "absorption" of a defendant's oral statement into a recorded statement of the government witness with whom he spoke effectively cancels attribution of that statement to defendant, within the meaning of Rule 16(a)(1). The statement has become that of the witness, not the defendant. *United States v. Feinberg,* 502 F.2d 1180 (7th Cir. 1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975); *United States v. Kenny,* 462 F.2d 1205 (3rd Cir.), *cert. denied,* 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972); *United States v. Wilkerson,* 456 F.2d 57 (6th Cir.), *cert. denied,* 408 U.S. 926, 92 S.Ct. 2507, 33 L.Ed.2d 337 (1972). Our own court has adopted this view with respect to a defendant's own statements to witnesses who are not police officers or other government agents. *Heiligh v. United States,* D.C.App., 379 A.2d 689 (1977); *Robinson v. United States,* D.C. App., 361 A.2d 199 (1976).

Three other U.S. Circuit Courts, however, as well as a number of federal District Court judges, have concluded that the words "statements [or confessions] made by

---

**3.** We do not consider whether Officer Clay's testimony amounts to "recorded testimony of the defendant before [the] grand jury," within

the meaning of Rule 16(a)(3); that issue has not been briefed or argued.

the defendant" must be interpreted broadly enough to permit Rule 16(a)(1) discovery of all oral statements of a defendant recorded by others—even by government witnesses. *United States v. Johnson*, 525 F.2d 999, 1004 (2d Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1127, 47 L.Ed.2d 327 (1976); *United States v. Lewis*, 167 U.S.App.D.C. 232, 511 F.2d 798 (1975); *United States v. Fallen*, 498 F.2d 172 (8th Cir. 1974); *U.S.A. v. Garrett*, 305 F.Supp. 267 (D.N.Y.1969); *United States v. Scharf*, 267 F.Supp. 19 (S.D.N.Y. 1967). Under this line of authority the statement remains the defendant's; it has not become transmuted into the statement of a government witness.

For proper perspective, it is important to note that this issue has become substantially moot for future cases. Super.Ct.Cr.R. 16, as amended on November 16, 1976—again tracking the revised Federal Rule—now specifically provides for production of "the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent . . ." If this amendment had been applicable here, defendant's statement to Officer Clay, as contained in the grand jury transcript, would have been discoverable without question, given the prosecutor's intention to hold it ready for impeachment purposes. As part of our analysis, therefore, we have to consider what the adoption of this amendment suggests, if anything, about the proper interpretation of Rule 16 prior to amendment.

Whatever resolution the courts have brought to the pre-amendment Rule 16(a)(1) issue, virtually all have conceded that the question has been an extremely close one. Moreover, one Circuit Court, *United States v. Wilkerson, supra* at 61, as well as our own court, *Heiligh v. United States, supra*, at 692; *Robinson v. United States, supra*, at 201, has been careful to stress that its decision barring production under Rule 16(a)(1) dealt only with a defendant's oral statements recorded by government witnesses who were *not themselves* government agents. This left open the possibility that a defendant's oral statements to law enforcement officers may be discoverable under Rule 16(a)(1), even though recorded only in the officer's own notes or grand jury testimony rather than in a statement signed or acknowledged by the defendant. The D.C. Circuit, in fact, has gone even further, holding that pre-amendment Rule 16(a)(1) authorizes a court to order "disclosure of the substance of a defendant's oral, *unrecorded* statements made to arresting officers." *United States v. Lewis, supra*, 167 U.S.App.D.C. at 237, 511 F.2d at 803 (emphasis added). *Contra, United States v. Dioguardi*, 332 F.Supp. 7, 17 (S.D.N.Y.1971).

No distinction can be made, based on the pre-amendment language itself, between a defendant's statements to government agents and to other government witnesses. The text does not suggest that statements recorded in a policeman's notes are discoverable, whereas statements recorded by a defendant's neighbor, for example, are not. Nevertheless, our own court, among others, has indicated that Rule 16's strong policy granting the right to pretrial disclosure of a defendant's statements or confessions to the police would be endangered if police reports containing an accused's oral statement were deemed the nondiscoverable words of the police, not the defendant. Our court has even expressed approval of *United States v. Lewis, supra*, pertaining to unrecorded oral statements; we have warned against the possibility that Rule 16(a) otherwise could be "circumvented by the expedient of the police failing to record or reduce to writing the accused's statement to them." *Robinson v. United States, supra* at 201.

In summary, even courts which have barred Rule 16 production of a government witness's record of a defendant's oral statement have recognized a possible exception for any statement by a defendant to the police. Thus, the recently amended version of Rule 16(a)(1) is best characterized as the codification of an interpretative trend under the previous version of the rule as to

statements to the police; it is not the addition of a new discovery right.

■ We conclude, therefore, that all statements by a defendant directly to government agents were discoverable under pre-amendment Rule 16(a)(1), however they have been recorded—including the transcript of a policeman's grand jury testimony.

It is true that our conclusion in this regard had not been settled at the time this case evolved, but the government cannot claim prejudice. The argument favoring discovery of defendant's statement to Officer Clay pursuant to Rule 16(a)(1) was so strong—and was so well known from reported cases in several federal circuits, including the District of Columbia, as well as from our own dictum in *Robinson, supra* —that the prosecutor had no right to decide unilaterally that such testimony was not producible (if properly requested). He should have known that under the circumstances only the court could properly make the Rule 16 determination, presumably *in camera.*

*United States v. Fallen, supra,* makes the point clearly. It involved undercover agents' written summaries of their conversations with the defendant. The government responded to a Rule 16(a)(1) motion by denying that any statement existed. The court held this to be error (although harmless on the particular facts).

> The government's representation to the trial court that no statements existed *foreclosed the court's exercise of any discretion. In open court, the court has the right to rely upon the truthfulness of the government's statement. . . .* The record indicates the government in good faith interpreted Rule 16(a)(1) to apply only to written or recorded statements of the defendant himself. The difficulty with this reasoning, however, is that in construing the statute the government attempted to become prosecutor and

judge at the same time by representing to the court that no statements existed. [Citations omitted.] *The proper approach under these circumstances is to reveal to the court what statements the government has, thus giving the court the opportunity to pass on the question of whether or not they come within the purview of Rule 16.* [*United States v. Fallen, supra* at 174; emphasis added.]

*Accord, United States v. Lewis, supra,* 167 U.S.App.D.C. at 235 n. 3, 511 F.2d at 801 n. 3; *United States v. Wilkerson, supra* at 61; see *Fleming v. United States,* 135 U.S.App. D.C. 131, 133, 417 F.2d 548, 550 (1969).

The question at this point, therefore, given defendant's right to his statements before trial, is whether defendant met his responsibility to *ask* for them, as required by Rule 16.

### B. *Defendant's Responsibility Under Rule 16 to Request His Written or Recorded Statements*

■ In its brief the government contends that irrespective of any right to defendant's statements reported in Officer Clay's grand jury testimony, the defense failed to make a request or file a motion to get it, as Rules 16–II and 16(a)(1) respectively require.[4] At the appellate argument, however, defense counsel represented that he orally had requested Rule 16 discovery sufficient to cover any statement by his client. The government's appellate counsel acknowledged that he did not know the truth of the matter. The prosecutor below is no longer with the U.S. Attorney's office and apparently has left the jurisdiction without communicating his version of the events. The government correctly pointed out, however, that there is no evidence of a Rule 16 request in the record, let alone a request for particular types of material. The government accordingly maintained that the defense failed to carry its burden under Rules 16 and 16–II not only to make the request clear but also

---

4. Super.Ct.Cr.R. 16–II on "Informal Discovery" instructs the clerk of the court not to accept a Rule 16 motion for filing "unless defense counsel certifies in writing that he has made a *bona*

*fide* attempt to secure the necessary relief from the prosecutor on a voluntary basis and that the prosecutor has not complied with such request." [Emphasis added.]

to certify noncompliance and file a motion to compel.

There is a serious problem with the government's contention on the facts of this case. At the status hearing on September 25, 1975, the court conscientiously asked whether defendant "has made any statements." The court's inquiry, therefore, provided a suitable occasion for the prosecutor to seek *in camera* determination under Rule 16 if he believed that the statements were not discoverable. Indeed, this was the only wholly truthful response the prosecutor could have made short of producing defendant's statements. Instead, the prosecutor affirmatively represented in open court that all the defendant's statements had been "exculpatory" and "oral." Unquestionably, this representation was substantially incorrect. True—the statement was exculpatory in the limited sense that a "con man" arguably talks his victim out of money rather than beat it out of him. But defendant's admission was fundamentally incriminating; it was a virtual admission that he had lured an innocent teenager into an alley for criminal purposes. Furthermore, by characterizing the statements as "oral," the prosecutor ignored the fact that they had been recorded—and were thus potentially discoverable. By representing that defendant's only statements had been oral and exculpatory, the government threw both the court and defense counsel off the track.

By its own actions, therefore, the government obviated the need for a request or a motion by defendant under Rule 16. The government responded in a way that moot-

ed any reason for further inquiry, either by the defense or by the court. "In open court, the court has the right to rely on the truthfulness of the government's statement" *United States v. Fallen, supra* at 174. So does defense counsel.

■ The government, moreover, had a continuing obligation under Super.Ct.Cr.R. 16(g) [5] to correct its own error by disclosing "additional evidence or material previously requested." Thus, by its error the government assumed the burden of correcting defense counsel's understanding that all his client's statements had been oral and exculpatory; defendant no longer had an obligation to make a Rule 16 request.[6]

We therefore hold that the court's question at the status hearing served the purpose of a request or motion for discovery under Rule 16. By virtue of the prosecutor's response, the Rule 16 issue was joined on September 25, four weeks before trial. We shall consider the consequences of this Rule 16 violation after evaluating defendant's additional ground for reversal: the Jencks Act, 18 U.S.C. § 3500 (1970).

C. *Defendant's Right to Grand Jury Testimony Under the Jencks Act, 18 U.S.C. § 3500 (1970)*

Just before trial, defense counsel made an informal request for "Jencks material." In response, the prosecutor delivered a packet of grand jury testimony and police reports. This packet, counsel says, reinforced his understanding that defendant had made no incriminating statements to agents of the government—especially not to Officer Clay, whose grand jury testimony

---

5. Super.Ct.Cr.R. 16(c), as currently in effect.

6. Were it not for the prosecutor's erroneous response to the court's question, defendant's discovery rights under Rule 16 might have been lost. Super.Ct.Cr.R. 12(b)(4), 16(a), and 47–I(c), when read together, arguably required a defendant to file a discovery request "within 10 days of arraignment or entry of appearance of counsel, whichever date is later, unless otherwise provided by the court." It has not been clear, however, whether the 10-day requirement applied to informal discovery. Recently, therefore, Super.Ct.Cr.R. 16–II has been amended, effective January 1, 1978, specifically

incorporating Super.Ct.Cr.R. 47–I(c) with its 10-day rule.

By his response at the September 25 status hearing, it appears that defense counsel had not made a discovery request within the ten days. Because the court can order Rule 16 discovery after the ten-day period has run, however, one cannot argue that defendant had lost his Rule 16 rights by the date of the status hearing, even if the 10-day rule applied. By virtue of the Court's power to order discovery at any time, defendant's rights here were saved—by the court itself.

(to the extent produced) revealed nothing of the kind.

The government maintains that by no stretch could defendant have been entitled under the Jencks Act to the disputed portion of Officer Clay's testimony, because it did not relate "to the subject matter as to which the witness [Officer Clay] has testified" on direct examination. 18 U.S.C. § 3500(b) (1970). That is to say, because Officer Clay did not specifically testify about defendant's statements as part of the government's case-in-chief, the Jencks Act afforded no vehicle for obtaining them.

The government is not necessarily correct. According to an oft-quoted Second Circuit Court opinion, the defendant is entitled to a statement under the Jencks Act if it relates " 'generally to the events and activities testified to.' " *United States v. Birnbaum*, 337 F.2d 490, 497 (2d Cir. 1964). Moreover, "the witness need not have testified on direct to the specific conversation or document" to warrant its production. *Id.* at 498; *see United States v. O'Brien*, 444 F.2d 1082, 1086 (7th Cir. 1971). The Third Circuit appears to have adopted a narrower view more akin to the government's position. *See United States v. Keller*, 512 F.2d 182, 186 (3d Cir. 1975).

Whatever the reach of the Jencks Act, we need not resolve it on the facts here. Whether the disputed portion of Officer Clay's grand jury testimony would—or would not—have been producible after careful Jencks Act scrutiny is not determinative, for even if it were *not*, the prosecutor's conduct was still misleading. Our reasoning is similar to our approach under Rule 16. Government counsel conceded at oral argument that if defendant, instead of informally requesting all "Jencks material" prior to trial, had filed a formal Jencks Act motion after Officer Clay had testified, the prosecutor would have been obliged to tender all pages of the grand jury transcript containing Officer Clay's testimony

"for the inspection of the court in camera." 18 U.S.C. § 3500(c) (1970). Thus, even though the prosecutor would have argued that the last page and a fraction were not producible under the Jencks Act, the court—not the government—would have made that determination. *See, e. g., United States v. Principe*, 499 F.2d 1135, 1138 n. 3 (1st Cir. 1974); *United States v. Pacelli*, 491 F.2d 1108, 1118 (2d Cir.), *cert. denied*, 419 U.S. 826, 95 S.Ct. 43, 42 L.Ed.2d 49 (1974); *Oertle v. United States*, 370 F.2d 719 (10th Cir. 1966), *cert. denied*, 387 U.S. 943, 87 S.Ct. 2075, 18 L.Ed.2d 1329 (1967). At a minimum, therefore, defendant would have learned, before taking the stand, that he had received an incomplete collection of witness statements; and he would have had an opportunity to argue that the test in *Birnbaum, supra*, should be applied to whatever documents the court was about to scrutinize.[7]

▮▮▮ In summary, given the statutory layout under 18 U.S.C. § 3500 (1970), it is clear that when the prosecutor informally produced Jencks Act materials prior to trial without comment, he implied that he was turning over the complete grand jury statement of Officer Clay—that there was no portion of the officer's testimony to be withheld for court scrutiny pursuant to 18 U.S.C. § 3500(c) (1970). Because the entire statement must be produced after a defense motion, subject only to a court order specifically limiting the contents, we hold that the entire statement also must be produced when the government agrees informally to honor a "Jencks" request, unless the prosecutor, at the time of the informal disclosure, explicitly reserves the right to submit withheld portions to the court. Again, the prosecutor usurped the court's function. By purporting to cooperate with the defense through an informal surrender of Jencks materials, the prosecutor effectively prevented a judicial determination that the Jencks Act explicitly would have required.

---

**7.** In rejecting defendant's argument that Officer Clay should not be allowed to impeach defendant with the "con man" admission, the court did not analyze the Jencks Act issue prior to defendant's taking the stand, let alone before Officer Clay's rebuttal testimony. The question arose late in the trial, without opportunity for thorough argument. We cannot say, therefore, that the court made the kind of Jencks Act determination required.

### D. Whether, in Fact, the Prosecutor's Actions Prejudiced Defendant

We have concluded that the government took unfair advantage of the informal discovery process to prevent a timely trial court determination of any right defendant may have had, before taking the stand, to see the complete grand jury testimony of Officer Clay. Defendant's conviction, nevertheless, must not be upset unless the prosecutor's actions were prejudicial. We turn now to that inquiry.

It is clear, beyond doubt, that the prosecutor intended to catch defense counsel off guard. Appellate counsel for the government conceded at oral argument that the only conceivable reason why the prosecutor had withheld the disputed portion of the grand jury transcript until after defendant had testified was his hope to use it precisely as he did to impeach defendant. The prosecutor was aware that only complainant and defendant knew what had happened in the alley, and that defendant would have to testify if complainant's version were not to prevail by default. The prosecutor, therefore, knew that the case would turn on their relative credibility, so he laid a trap for defendant—and caught him.

Even the most marginal dent in defendant's credibility could have tipped the case for the jury. When Rosser took the stand, he testified that he merely had entered the abandoned building to "roll up some marijuana," leaving Cavender in the alley. Rosser added that as he as coming out of the building Cavender had "said 'I'm going to leave out of here' or something." Rosser then "grabbed him by his arm" in an effort to reassure him that there was no danger. The defense further claimed that Rosser then followed Cavender into the street for the friendly purpose of persuading him to return for his discarded belongings. If there had been foul play, Rosser asks, why would he have chased Cavender into the open?

Rosser's version of the events was not implausible. His impeachment with the statement he made to the police, however, could well have influenced the jury not to believe him. Thus, we hold, after a complete review of the record, that the prosecutor's informal delivery of a partial transcript of Officer Clay's grand jury testimony—from which defendant's inculpatory statement had been excised—was prejudicial. It is therefore a basis for reversal; it cannot be considered harmless.

Recently, the District of Columbia Circuit Court of Appeals reversed a narcotics conviction in a similar situation. In *United States v. Lewis, supra,* defense counsel filed a motion to suppress all verbal or written statements by defendant on *Miranda* grounds. The government filed a response that " 'the defendant did not make any statements at the time of his arrest which the government intends to use against him'." *Id.,* 167 U.S.App.D.C. at 233, 511 F.2d at 799. There was no pretrial hearing on the motion. In its direct case the government introduced no evidence of any statement by defendant. After defendant had testified, however, the prosecutor called a police officer as a rebuttal witness to reveal that defendant had stated at the time of his arrest that he customarily shot heroin into his ankle. Defendant moved for a mistrial on the ground that he had been misled by the prosecutor's earlier representation. The government replied that any misunderstanding had been harmless because "the statement in question was not discoverable under Rule 16(a)(1) of the Federal Rules of Criminal Procedure as its substance had never been written down or recorded." *Id.* at 235, 511 F.2d at 801. The trial court denied defendant's motion; the Court of Appeals reversed and remanded for a new trial.

It is of the utmost importance that the government respond accurately and unambiguously to defense counsel's inquiries and motions relating to statements, both written and oral, made by a defendant to the authorities. The government's answer to the defense motion to suppress, that "[t]he defendant did not make any statements at the time of his arrest which the government intends to use against him", was an equivocation. Taken to-

gether with the pretrial conference between [defense counsel] and [government counsel], as well as with the grand jury testimony, the preliminary hearing testimony, and a second police report—none of which indicated any statement by Lewis,—it was only natural and reasonable that [defense counsel] would construe the government response to mean that no such statement would be used at any time during the trial. [*Id.*]

*Cf. United States v. Padrone*, 406 F.2d 560 (2d Cir. 1969). The Circuit Court's analysis is most appropriate to the present case. It was only "natural and reasonable" that defense counsel here would construe the prosecutor's response at the status hearing, as well as the informal pretrial delivery of grand jury testimony and police reports, to preclude any possibility of impeachment by an undisclosed statement of the defendant to the police.

The government protests, nevertheless, that the present case differs from *Lewis*. Here, defense counsel failed to ask for his client's statements when he learned about them at the September 25 hearing, four weeks prior to trial. Moreover, defendant has not even claimed on appeal that the September 25 hearing had misled him. The government suggests, therefore, that under these circumstances defendant should be held responsible for his own failure to press the matter further. He allegedly prejudiced himself.

We cannot agree that defense counsel was obliged to doubt, and thus test, the prosecutor's word by demanding a copy of defendant's statements. Counsel especially cannot be faulted here, for the prosecutor represented that all statements were "oral" and thus implicitly not recorded. The prosecutor had the greater burden on September 25—the burden of telling the truth in

every respect. If, at the status hearing, he had responded correctly that defendant had made an inculpatory statement reflected in a police officer's grand jury testimony—or, more simply, that the government possesses materials requiring *in camera* inspection— we must assume that both defense counsel and the court would have probed further, with the inevitable result of a timely, carefully evaluated Rule 16 determination. To assume otherwise would be grossly unfair to defendant, especially because the government, under the rules of discovery, retained the burden of correcting its own error.

It is also true that defendant has not cited the September 25 hearing as a basis for his Rule 16 contention on appeal. Apparently, he forgot about it and did not have the benefit of a September 25 transcript when he later prepared the appeal.[8] As we see it, however, the only possible significance of this omission cuts in defendant's favor. It suggests that the prosecutor's ploy indeed worked—that defense counsel was lulled into a false sense of security on September 25 about his client's statements to the police. The truth remains undiminished: on September 25 the prosecutor misstated a critical fact which, under the rules, he had a continuing obligation to correct. Instead, he compounded the error by excising the grand jury minutes before delivering them to defendant. Defense counsel's failure to discover the September 25 issue until after the government had quoted from the record of that hearing in its appellate brief merely confirms the success of the prosecutor's tactic.

We agree that if defense counsel had been put on notice, before defendant took the stand, that his client had made *incriminating* statements to the police and failed to request them, he would have found it

---

**8.** The government ordered the September 25 transcript for use in its own brief and supplied it for the record. Neither the government nor the court reporter notified defense counsel of the government's request for this transcript. Nor was either required to do so. Our court accordingly has amended its rules, effective September 26, 1977, as follows:

It is ORDERED, *sua sponte*, that Rules 10(c) and 23(b) are hereby amended by adding the following: In any appeal in which the government (United States or District of Columbia) or the Public Defender Service is a party and orders reporter's transcript prepared, counsel shall serve a copy of the order for transcript upon opposing counsel and upon the Clerk of this Court.

difficult if not impossible to demonstrate error from the government's eventual use of those statements to impeach defendant. *See United States v. Arcentales*, 532 F.2d 1046 (5th Cir. 1976). Nor is it likely that prejudicial error could have been shown if the improperly withheld statement, used for impeachment, merely had corroborated other statements in the hands of the police that defendant already knew about. *See United States v. Johnson, supra.*[9] Nor, finally, would there have been the requisite prejudice for reversal if the case against the defendant had been so formidable that failure to produce the statement amounted to harmless error.[10] *United States v. Arcentales, supra* at 1049; *United States v. Johnson, supra* at 1005.

In the present case, however, the government threw defense counsel off the track by characterizing defendant's statement as "exculpatory" when its primary thrust was inculpatory.[11] Defendant's statement, in fact, was neither peripheral to the government's case nor cumulative. Absent its use

for impeachment, we cannot conclude from the record that defendant's conviction was assured.[12]

## V. Conclusion

■ We want to be clear: we are not saying here that a defendant who fails to make a record of a Rule 16 request during informal discovery necessarily has a valid complaint about the government's surprise use of statements which the defendant has not seen. The burden, rather, is on a defendant to convince the court that he made the requisite request, and that the government denied it. Thus, our decision here turns on the government's incorrect representation on September 25, 1975, in open court that defendant's statements were oral and exculpatory, coupled with the prosecutor's implied delivery of Officer Clay's complete grand jury testimony as part of an informal pretrial surrender of "Jencks material." As to the Rule 16 aspect, we do not—because we cannot on this record—

9. In *United States v. Johnson, supra,* the defendant argued that timely discovery of the statements would have affected his decision to take the stand. The court rejected that argument on the ground that he had to take the stand in any event to rebut the other strong evidence against him; otherwise, his "goose was cooked." *Id.* at 1005. In the present case defendant does not argue that he might not have taken the stand had he known about the withheld portion of Officer Clay's testimony to the grand jury; but unlike *Johnson, supra,* there is not the strong corroboration of complainant's charges here that could lead a court to find the prosecutor's withholding tactic harmless. This case turned on whether the jury believed complainant or defendant.

10. In *Johnson, supra,* and *Arcentales, supra,* the Second and Fifth Circuit Courts of Appeal found that the error in not producing statements pursuant to Rule 16(a) was harmless beyond a reasonable doubt, thereby utilizing the standard of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) applicable to error of a "constitutional dimension." We *do not need to decide* whether that standard should be used here, for it is clear from the record that the prosecutor's actions, sustained by the trial court, require reversal under the less stringent standard announced in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). We "cannot say, with fair assurance, after pondering all

that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error . . .." *Id.* at 765, 66 S.Ct. at 1248.

11. It is possible that the prosecutor did not perceive that the "con man" admission was inculpatory, even though he did see its potential for impeaching defendant. It is also possible that in saying defendant's statements were "oral," the prosecutor did not intentionally overlook the fact that they had been recorded. Thus, we choose not to reach defendant's contention that the prosecutor's conduct violated professional ethics.

12. On his direct examination, to avoid impeachment by the prosecutor, defendant admitted to four prior convictions—one each for robbery, housebreaking, possession of implements of a crime, and violation of the act relating to dangerous drugs. We cannot conclude, however, that the adverse impact of these admissions on his credibility was so overwhelming that his later impeachment with the "con man" admission was merely cumulative and thus harmless. To the contrary, impeachment of a defendant by showing that he appeared to lie on the stand is usually devastating; it has an impact on credibility beyond the harm one normally would associate with prior convictions.

make a finding that defense counsel made a Rule 16 request.

We also want to be clear, however, about another aspect of our holding: if the record does show that a defendant made a Rule 16 request, the government will withhold relevant material at its peril if it attempts to use it later, at trial, without benefit of the court's scrutiny prior to any possible prejudice to defendant.

We suggest that the most effective way of making and responding to a Rule 16 request in the context of the required informal discovery is for defense counsel to deliver a letter or "request" document to the prosecutor specifying the types of material desired, and for the prosecutor to confirm in writing either that all such material has been produced or that certain material is being withheld pending a court determination at defendant's instance. While such a written exchange is not required by the rule, this case should make clear why that approach is highly desirable. A similar procedure is advisable for informal handling of Jencks Act requests.

*Reversed and remanded for a new trial.*