**Woodrow WILSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 90–1566.**

District of Columbia Court of Appeals.

Argued Oct. 9, 1991.
April 14, 1992.

---

Richard Greenlee, Public Defender Service, with whom James Klein and Page Kennedy, Public Defender Service, were on the brief, for appellant.

Edward G. Burley, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Roy W. McLeese, III, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and FERREN and TERRY, Associate Judges.

ROGERS, Chief Judge:

Appellant Woodrow Wilson was indicted for distribution of cocaine in violation of D.C.Code § 33–541(a)(1). Following a mistrial after two days of jury deliberations, he was convicted by a jury after a second trial. On appeal he contends that the trial judge erred by allowing the prosecutor, over defense objections, to impeach him with his criminal convictions after the prosecutor had advised defense counsel and the trial judge before trial that there were no impeachable convictions. Specifically, he contends that his right to select a jury, by exercise of peremptory challenges, and his right to decide whether to go to trial, or to enter plea negotiations with the government, were prejudiced. Therefore, appellant maintains that his due process rights were violated and his conviction should be reversed. We agree that the prosecutor's pretrial statement was an assurance on which defense counsel could reasonably rely, and that its breach during trial prejudiced appellant. Accordingly, we reverse.[1]

1. In view of our disposition, we do not reach appellant's alternative contention that the

## I

Around midnight October 31, 1989, undercover police officer Michael Quander was approached by Michael Pointer, who asked the officer if he was "looking" for drugs. Quander replied that he "wanted a 20," meaning a small amount of crack cocaine. He then followed Pointer to the rear of the carry-out, where they approached a man whom Quander later identified as appellant. Pointer asked appellant "to give him one," and appellant handed Pointer an "off-white substance that was already in his hand." Pointer handed the object to Officer Quander, who gave appellant twenty dollars in pre-recorded funds. The officer never spoke to appellant during the drug transaction.

Officer Quander returned to his car, and broadcast a "lookout" description of the two men. He described appellant as "a black male, about five-eight, five-nine, medium to dark complected, wearing a red shirt and blue sweat pants." A police arrest team apprehended Pointer in front of the carry-out, and Quander drove by to confirm his identification. Pointer was searched but nothing was found on his person.

Twenty to twenty-five minutes later, Officer Quander noticed appellant on the corner of Eastern Avenue and Rhode Island Avenue. Appellant was wearing the same clothing he had worn earlier, except that he now wore a green hat. Quander broadcast a "lookout," and an arrest team detained appellant; no pre-recorded funds or narcotics were found on him. A member of the arrest team testified, as did an expert witness.

Appellant's defense was innocent presence. He testified that he lived near the carry-out and had left home around 12:05 a.m. on November 1, 1989 to buy some egg rolls for his pregnant wife at the carry-out; he had approximately three dollars with him. He was wearing blue sweat pants and a red sweat shirt with FILA on it. On his way to the carry-out he was arrested.

He denied speaking to anyone or participating in the sale of drugs. On cross examination he was impeached with two 1977 convictions, one for sodomy and the other for indecent acts. Appellant's wife also testified, corroborating his testimony that she had asked her husband to get some egg rolls shortly after midnight.

In rebuttal, the government called Michael Pointer, who claimed that appellant was with him behind the carry-out early on the morning of November 1, 1989. Pointer claimed that he had approached a man who turned out to be Officer Quander, and brought Quander to appellant. According to Pointer, appellant had given Pointer "a loose twenty rock" of crack cocaine, and Pointer had sold it to Quander. Pointer admitted on cross examination that he had entered into a plea agreement to testify against appellant in return for a plea of guilty to the lesser offense of attempted distribution of cocaine. He also conceded that he did not have an arrangement for selling drugs that evening with appellant, and he denied knowing where the drugs came from.

## II

At a pretrial status conference before the second trial, the trial judge inquired of the prosecutor, "What about impeachable convictions?" The prosecutor replied, "No, ma'am." Appellant contends that the prosecutor's statement was an implicit if not explicit promise that appellant would not be impeached with his prior convictions were he to testify. He further contends that although defense counsel had access to information about appellant's prior convictions, defense counsel was entitled to rely on the prosecutor's assurance in preparing for trial and presenting a defense. Therefore, he continues, the prosecutor's midtrial disclosure of his intention to impeach appellant was a breach of the promise, prejudiced appellant by causing him to forego opportunities to exercise peremptory challenges and to engage in plea negoti-

government violated Super.Ct.Crim.R. 16 when it failed to disclose appellant's impeachable convictions prior to trial.

ations, and was fundamentally unfair. The government responds that the prosecutor's response to the trial judge's pretrial inquiry was not a promise, but was only "a mistaken response to the trial court's administrative inquiry," and that appellant has failed to show any detrimental reliance.[2]

**A**

■ In a series of decisions the court has concluded that a prosecutor's pretrial representation of the government's intention creates an obligation to inform the defense and the trial court of new information in a timely manner since the defense and the court are entitled to rely on the prosecutor's pretrial representation. Where the prosecutor fails to honor his or her pretrial obligation, and the defendant is prejudiced, the court has reversed the conviction and remanded the case for a new trial.

Thus, in *Rosser v. United States*, 381 A.2d 598 (D.C.1977), the prosecutor, in response to a question by the trial judge about whether the defendant had made any statements, indicated that the defendant's statements had been exculpatory and oral. At trial the prosecutor impeached the defendant with an incriminating transcript of grand jury testimony. Although the defendant had not requested the statements pursuant to Super.Ct.Crim.R. 16, the court concluded that the prosecutor's representation eliminated the need for the defendant to make such a request, because "[i]n open court, the court has the right to rely on the truthfulness of the government's statements." 381 A.2d at 605 (quoting *United States v. Fallen*, 498 F.2d 172, 174 (8th Cir.1974)).[3] *See Arnold v. United States*, 511 A.2d 399, 408 (D.C.1986) ("[s]ince the [trial] court had carefully attempted to ensure that all identification testimony was

disclosed ahead of time, the prosecutor could not claim to be unaware of the need for disclosure").

Likewise in *McCall v. United States*, 596 A.2d 948 (D.C.1991), the court found that a promise by the prosecutor arose out of the prosecutor's pretrial statement to defense counsel that he did not intend to ask a witness to make an in-court identification. At trial, over defense objection, the prosecutor asked the witness whether he would recognize any of the people he saw the night of the assault if he saw them again, and the witness identified the defendant as one of the victim's assailants. The court concluded, unanimously, that the prosecutor had made a promise to the defense, although it divided on whether a new trial was required. The majority was satisfied that there was no intent by the prosecutor to mislead the defense, only "careless conduct by the prosecutor" and that the prosecutor was as surprised as the defense by the witness' answer. *Id.* at 950. The dissent focused on the likelihood that had defense counsel been informed that the witness would have an opportunity to make an in-court identification, he could have taken a number of protective steps, which he did not, "justifiably relying on the prosecutor's contrary assurance....", and further, that "[t]he prosecutor's change of mind did not entitle him to break a promise on which [the defendant's] counsel had a right to rely." *Id.* at 958, 960 (Schwelb, J. dissenting).

In *Smith v. United States*, 491 A.2d 1144, 1147 (D.C.1985), after the defense had rested, the prosecutor sought to call a detective to testify in rebuttal regarding a detailed statement that the defendant had given to the police admitting his involvement in an armed robbery. Defense counsel objected on the ground that during pre-

---

**2.** After oral argument, the court requested the parties to file supplemental briefs on whether appellant's due process rights were violated when the government was allowed to impeach appellant after stating before trial that there were no impeachable convictions, and whether the prosecutor's statement was a promise that the government did not intend to impeach appellant if he testified. Order of October 16,

1991. We thank the parties for their supplemental briefs.

**3.** *See Yoon v. United States*, 594 A.2d 1056 (D.C. 1991) (failure to disclose oral statements); *Wiggins v. United States*, 521 A.2d 1146, 1147 (D.C. 1987) (prosecutor failed to bring altered bill to trial for defense counsel to inspect although "it was understood" that he would).

trial discovery he was not advised that the defendant had given a detailed statement to the detective. On appeal, the court concluded that the government had not complied with Super.Ct.Crim.R. 16(a)(1)(A), and that because the case "became essentially a credibility contest between [the defendant] and the complainant," reversal was required. 491 A.2d at 1148. The appellant, the only defense witness, denied that he had admitted his involvement to the detective, while the detective testified that the appellant had given a detailed statement acknowledging his involvement. Noting the sparsity of other evidence, the court stated that "it cannot be reasonably controverted that [the defendant's] admission, as related by [the detective] in the government's rebuttal case was the decisive factor in his conviction." *Id.* at 1148–49. Further, the court observed that "had [defense] counsel been apprised of the extent of [the defendant's] confession before trial, 'his trial preparation and strategy might well have been different.'" *Id.* at 1149 (quoting *United States v. (Sylvester) Lewis,* 167 U.S.App.D.C. 232, 235, 511 F.2d 798, 801 (1975)).

These decisions are in accord with decisions of the Supreme Court that a promise may be implied as a result of actions by the government, and that, although implicit, such a promise still binds the government. *See Wainwright v. Greenfield,* 474 U.S. 284, 292, 106 S.Ct. 634, 639, 88 L.Ed.2d 623 (1986) (*Miranda* warnings include implicit promise that a defendant's post-arrest silence will not be used against him at trial); *Doyle v. United States,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (same: post arrest silence used in prosecutor's argument as indication of sanity); *cf. Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1981) (express promise

by government not to allocute at sentencing in return for the defendant entering a guilty plea).

■ The government's position in the instant case, that the prosecutor's pretrial response to the trial judge's inquiry about impeachable convictions amounted to no more than "a mistaken understanding of the law as to whether the previously disclosed prior convictions were usable for impeachment purposes under D.C.Code § 14–305(b)," is unpersuasive for several reasons.

First, the trial judge's inquiry occurred during a pretrial conference at which the judge was attempting to find out how the trial would proceed and what issues would arise that could be addressed prior to trial. Thus, the judge's question about impeachable convictions was designed to promote the efficient administration of justice, avoiding mid-trial delays, such as occurred here, and other potential problems. *See Reed v. United States,* 485 A.2d 613, 615 n. 1 (D.C.1984) (referring to trial judge's written instructions directing prosecutors to advise him of impeachable convictions). The question about impeachable convictions was one of many. The judge asked counsel about whether the voir dire form listing the questions that the judge would ask was "all right" with counsel,[4] how many witnesses would be called by the parties,[5] and whether the trial could be completed by the following Monday. The judge also asked the prosecutor whether there were any post-arrest statements, about the exhibits, *Drew*[6] and *Toliver*[7] issues, and impeachable convictions.

The trial judge observed that she routinely requested the information about impeachable convictions as an administrative

---

**4.** The judge indicated that counsel would also be permitted to follow up with questions on voir dire. The judge reviewed in detail the procedures she followed during voir dire, including the manner in which counsel were to exercise their ten peremptory challenges.

**5.** At this time defense counsel indicated that the defense would call a total of two witnesses after the trial judge inquired whether the defense would have two witnesses plus appellant.

Hence, at this point it was unclear whether appellant would testify. The prosecutor indicated only that the co-defendant "may" be used by the government.

**6.** *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964).

**7.** *Toliver v. United States,* 468 A.2d 958 (D.C. 1983).

matter, explaining that she did so in order to understand how the trial would proceed and so that she would be in a position to decide before the trial began whether the government, in fact, had proof of appellant's prior convictions, and if so, whether they could be used to impeach appellant if he testified. The wisdom of such an inquiry is demonstrated here. While the judge ultimately concluded that it was "very clear" under the statute that the convictions could be used for impeachment, two mid-trial recesses were required, the last involving the release of the jury, so that the judge could examine the law.[8] Had the prosecutor correctly informed the judge prior to trial, the delays, as well as the confusion about the law, could have been avoided. In addition, defense counsel would have been on notice before trial that the government could, if it chose to, impeach appellant if he testified.

Second, the prosecutor's mid-trial announcement to the trial judge that he intended to impeach appellant if he testified, indicates that the prosecutor's pretrial response had been intended to inform the judge that the government would not impeach appellant with his prior convictions.[9] Before calling the last witness in the government's case-in-chief, the prosecutor informed the trial judge that he had now concluded that appellant's prior conviction in 1977 for indecent acts could be used to impeach appellant, and that the government intended to impeach appellant with them should he testify.[10] Defense counsel objected, stating that "when I originally

had discovery in this case, it was the Government's position that there were no impeachable convictions." Defense counsel noted that the government had not used the convictions at the first trial. Claiming that the prosecutor's last-minute change in position was prejudicial to appellant, defense counsel argued that the nature of the convictions—"sexual crimes of long ago"—made them highly prejudicial, and that had counsel known of the prosecutor's plans counsel might have requested additional questions on voir dire and also might have "selected a different kind of juror." Defense counsel also stated that if the government was allowed to use the convictions, then counsel would "seriously consider rethinking [her] position" about putting appellant on the witness stand. The prosecutor did not respond. Thus, the trial record indicates that both counsel and the trial judge had proceeded to trial on the basis of the assurance that appellant would not be impeached with prior convictions.

Furthermore, it is clear that defense counsel's reliance on the prosecutor's representation was reasonable. The prosecutor's pre-second-trial assurances were consistent with the government's conduct at appellant's first trial where the government had not impeached appellant with his convictions. The fact that the first trial resulted in a mistrial, when the jury could not agree, might cause defense counsel to be wary of the possibility that the government might change its strategy at a second trial. But there was no reason here for

---

**8.** D.C.Code § 14–305(b)(2)(B) (1989 Repl.) provides in relevant part that:

> no evidence of any conviction of a witness is admissible under this section if a period of more than ten years has elapsed since the later of (i) the date of the release of the witness from confinement imposed for his most recent conviction of any criminal offense, or (ii) expiration of the period of his parole, probation, or sentence granted or imposed with respect to his most recent conviction of any criminal offense.

At the time of the second trial, appellant was on parole for his convictions of sodomy and indecent acts.

**9.** *See Reed, supra,* 485 A.2d at 617 (referring to government's pretrial practice of obtaining a

certified copy or a stipulation from defense counsel regarding the defendant's prior convictions to be used for impeachment).

**10.** The prosecutor stated:

> During the preliminaries before jury selection, I represented that [appellant] didn't have any impeachable convictions. Since that time I have taken a closer look at the file and have talked to a couple of other people in the office and have come to the conclusion that he does, in fact, have a conviction of indecent acts in 1977 for which he was sentenced on—he was sentenced on January the 24th of '77 and is still on parole. It is my understanding of the law that since the sentence did extend into the 10–year time period that he can be impeached based on that conviction.

defense counsel to doubt that the prosecutor's response to the judge's question was an assurance that appellant would not be impeached if he testified. *See Rosser, supra*, 381 A.2d at 608. There also was nothing to suggest that new information had been uncovered regarding appellant's prior convictions. While the record indicates that defense counsel was aware of appellant's prior convictions, there were plausible reasons why the prosecutor might have decided not to impeach appellant with his prior convictions.[11]

■ It is, of course, true that both government and defense counsel are charged with knowing the law; so is the court. But the government's suggestion that the judge's pretrial inquiry sought a legal opinion from the prosecutor is somewhat strained. Rather, the judge's inquiries sought counsel's view of how the case would be tried. Depending on the prosecutor's responses, the judge presumably would inquire further as was her general practice. *See Reed, supra*, 485 A.2d at 617. Moreover, the government is obligated to respond accurately and unambiguously to pretrial inquiries made by the court as well as defense counsel. *See Rosser, supra*, 381 A.2d at 608 (citing *Lewis, supra*, 167 U.S.App.D.C. at 235, 511 F.2d at 801–02 (only "natural and reasonable" that counsel view prosecutor's representation to the trial judge as "precluding any possibility of impeachment....")).[12] While the prosecutor cannot be viewed as having de-

liberately withheld information—appellant makes no such claim—and the prosecutor's mistake of law would not relieve defense counsel of the obligation to make her own inquiry to determine whether appellant had impeachable convictions, *see generally Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (ineffective assistance of counsel), the prosecutor's representation eliminated the need for defense counsel, as well as the trial judge, to make further inquiry on the matter. *See Rosser*, 381 A.2d at 605.

■ Therefore, we hold that the prosecutor's pretrial assurance was a promise not to impeach appellant with his prior convictions were he to testify that was breached when the prosecutor was allowed to use the convictions to impeach appellant, and that defense counsel could reasonably rely on the prosecutor's assurance in preparing and conducting the defense.

### B

The question remains whether the prosecutor's breach of his pretrial promise prejudiced appellant.[13] The government maintains, by an analogy to the contract doctrine of promissory estoppel, that even if the prosecutor's statement could be considered a promise, appellant has failed to show any detrimental reliance on that promise prior to the government's revocation or any "unavoidable injustice." *Bender v. Design Store Corporation*, 404 A.2d

---

11. For example, a prosecutor could reasonably decide not to impeach the defendant in order to avoid the risk of jury sympathy for the defendant where, for example, a conviction is old or the conviction relates to events that might, as here, jeopardize the defendant's family. (There was evidence appellant's wife was pregnant, and it was unclear whether she was aware of the 13-year old convictions). Old convictions might, at times, be difficult to verify with certified copies of the judgments of conviction, witnesses difficult to locate, and a defendant's denial could result in a mistrial. (The trial judge was unable to locate the court jacket for the prior convictions.) Old convictions unrelated to the crime charged might also be viewed as being of questionable relevance. Some prior convictions might be more trouble than they are worth, either because they are highly inflammatory and prejudicial, as was suggested by defense

counsel and as the trial judge agreed regarding the indecent acts convictions, or because they are relatively minor and would do little to advance the government's case, as could be true with very old convictions.

12. Cf. *(Archie) Lewis v. United States*, 408 A.2d 303 (D.C.1979) (discussing *Brady v. Maryland* and decisions of the Supreme Court "premised on the view that due process requires pretrial (or at least at-trial) disclosure, upon specific request, of evidence material to guilt or innocence") (citations omitted).

13. *Smith, supra*, 491 A.2d at 1145. *See Rosser, supra*, 381 A.2d at 607. Cf. *Arnold, supra*, 511 A.2d at 408 ("[p]rosecutorial misconduct requires reversal of a conviction ... only if the defendant suffered 'substantial prejudice' as a result").

194, 196 (D.C.1979); *Moss v. Stockard*, 580 A.2d 1011, 1034 (D.C.1990). The government points out that the prosecutor's mid-trial announcement occurred before the defense had made an opening statement committing appellant to testifying at trial and that the trial judge would have been unlikely to have asked the jury panel during voir dire about appellant's prior convictions. Further, the government maintains that because appellant did not claim in the trial court that he was prejudiced by the prosecutor's change of position on the ground that he might not have gone to trial at all had he known that he would be impeached with his convictions, the trial judge could not have considered this claim of prejudice in exercising her discretion. Appellant also cannot show, the government continues, that he would have been convicted of a lesser included offense or that he would have received less than the mandatory minimum sentence had he pleaded to the indictment.[14]

There is record evidence that might well support the trial judge's finding that, with regard to appellant's decision about whether to testify at trial, appellant was not prejudiced by the government's mid-trial change of position. Defense counsel had not made an opening statement and, thus, had not indicated to the jury that appellant would testify. Also, although this was apparently not a factor in the judge's decision, the defense, in fact, had the weekend to consider whether appellant should testify.[15] Further, there is record evidence that might support the judge's statement that

she would have been unlikely to have allowed questions of the jury panel during voir dire about appellant's prior convictions because of concern about prejudicing appellant.[16] *See Jenkins v. United States*, 541 A.2d 1269, 1272 (D.C.1988) (broad discretion of trial court over conduct of voir dire subject to "essential demands of fairness") (citations omitted).[17] But even if we were to find no error by the trial judge in these rulings, we hold that appellant was prejudiced in exercising peremptory challenges and in deciding whether to go to trial.

The Supreme Court has pointed out in a series of decisions that breach of a government promise, even when it is not explicit, may be "fundamentally unfair" to the due process rights of a defendant. *See Wainwright v. Greenfield, supra*, 474 U.S. at 292, 106 S.Ct. at 639 (cross examination of defendant about his post-arrest, post-*Miranda* silence is fundamentally unfair and violates due process); *Doyle v. Ohio, supra*, 426 U.S. at 619, 96 S.Ct. at 2245 (same: post-arrest silence used during prosecutor's argument to show sanity violates due process); *cf. Santobello v. New York, supra*, 404 U.S. at 262, 92 S.Ct. at 498–99 (allocution by government at sentencing after plea agreement to contrary violates duties of prosecutor and contrary to interests of justice). That a "breach of the agreement was inadvertent does not lessen its impact." *Santobello v. New York, supra*, 404 U.S. at 262, 92 S.Ct. at 499.

Likewise here, appellant contends, the prosecutor's promise not to impeach him

---

**14.** Appellant was sentenced to a prison term of four to twelve years. *See* D.C.Code § 33-541(c)(1)(A) (imposing a mandatory minimum sentence of four years).

**15.** The continuance was granted so that appellant's wife would be available to testify, not to afford appellant time to decide whether or not to change his mind about testifying in light of the prosecutor's statement that he would impeach appellant with his prior convictions.

**16.** The trial judge stated:

I generally would not bring it up on an impeachable conviction where your client may or may not take the stand, and you have informed them all that he has these convic-

tions. Even if he then decides not to do it, you have already told them. So, my inclination would have been, if he requested it, frankly not to ask it and plant an idea, particularly where it can be used only in a narrow area.... If he decides not to take the stand, they will all be speculating that is why he didn't do it as opposed to the fact that he doesn't have the burden.

**17.** *See generally Johnson v. United States*, 398 A.2d 354 (D.C.1978) (trial court discretion). We need not decide whether it would have been an abuse of discretion not to ask during voir dire whether anyone on the jury panel would be unable to render a verdict based on the evidence where a person had been convicted of sex crimes. *See Jenkins, supra*, 541 A.2d at 1274.

with his prior convictions if he waived his constitutional right to remain silent "was, in essence, an assurance that the decision to testify (and forgo his constitutional right) would 'not be jeopardized.'" *Wainwright v. Greenfield, supra,* 474 U.S. at 292, 106 S.Ct. at 639. He further contends that, in reliance on the prosecutor's pretrial representation, his constitutional right to the effective assistance of counsel was implicated. Specifically, he contends that he was denied the right to select a jury in light of the possibility that he might be impeached with his prior convictions if he testified at trial, and to decide, in light of such knowledge, whether or not to go to trial or to engage in plea negotiations with the government.

Peremptory challenges are "viewed as 'one of the most important rights secured to the accused.'" *Wells v. United States,* 515 A.2d 1108, 1111 (D.C.1986) (violation of Super.Ct.Crim.R. 24) (quoting *Pointer v. United States,* 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1984), and citing *Taylor v. United States,* 471 A.2d 999, 1003 (D.C. 1983) (advising trial court in future to "apprise the parties of the rules which will govern the jury selection prior to the start of the process")); *Cash v. United States,* 553 A.2d 215, 217 (D.C.1989). Interference with a defendant's exercise of peremptory challenges is per se grounds for reversal. *See Wells, supra,* 515 A.2d at 1111 (citing *Butler v. United States,* 377 A.2d 54, 56 (D.C.1977)); *Armwood v. United States,* 373 A.2d 895, 897 n. 6 (D.C.1977) (where trial judge frustrates the defendant's "effective use" of peremptory challenges, the defendant need not demonstrate prejudice to obtain reversal of a conviction).

█ Here, immediately after the prosecutor announced his intent to impeach appellant if he testified, defense counsel objected, stating that had she been aware of the prosecutor's intent to impeach appellant with highly prejudicial prior convictions, she might have selected a different jury. The trial judge did not address this objection, the prosecutor did not challenge it, and thus, this court is presented with an unchallenged defense claim that a different jury might have been selected. Nor was the defense claim implausible; picking a jury has developed into an art form and different considerations might well affect jury selection for a defendant who knows he will be impeached with convictions for sex offenses. The judge's mid-trial decision to allow the prosecutor to impeach appellant, therefore, had the effect of interfering with "the full, unrestricted exercise by the accused of that right." *Cash, supra,* 553 A.2d at 217 (quoting *Pointer, supra,* 151 U.S. at 408, 14 S.Ct. at 414).

The government's pretrial assurances placed appellant in the position of proceeding to trial on the basis of the government's representation that could have affected the kind of a jury appellant would have wanted at this trial. *See Lewis, supra,* 167 U.S.App.D.C. at 235, 511 F.2d at 801 (had counsel not been misled, "his trial preparation and strategy might well have been different"). The government's mistake of law does not erase the effect of the breach of the government's promise. The prior convictions were highly prejudicial, and impeachment with those convictions attacked appellant's credibility, which was critical to his defense of innocent presence. *See Smith, supra,* 491 A.2d at 1148; *Lewis, supra,* 408 A.2d at 308 ("substantial possibility ... that impeachment [of witness] with prior convictions will affect the outcome....").[18] Because of the prosecu-

---

18. Where a defendant claims a violation of the procedures under Rule 24, in order to show that his effective use of peremptories was denied, "a defendant must establish how the constitution of the jury would have been any different or more preferable had the proper procedures [under Rule 24] been followed." *Cash, supra,* 553 A.2d at 217. Appellant made no showing in the trial court and has made none on appeal. *Id.* at 218 ("appellant has failed to allege that the constituted jury was not the one that appellant in fact wanted"). But this case is significantly different from a Rule 24 situation. Appellant did not discover the problem with the exercise of his peremptory challenges until after the trial was well under way. As a practical matter it would be well nigh impossible to recall which juror a defendant would have struck in the hope of getting another particular member of the panel on the jury. Therefore, the burden placed on a defendant for Rule 24 claims is inappropriate when the jury selection issue arises from a

tor's pretrial assurance, appellant missed the opportunity to use his peremptory challenges with an eye toward excluding jurors who might be particularly incensed by the nature of appellant's prior convictions, for sodomy and indecent acts, even though the convictions were thirteen years old.

■ In addition, although appellant has "no constitutional right to plea bargain," *Weatherford v. Bursey,* 429 U.S. 545, 561, 97 S.Ct. 837, 846–47, 51 L.Ed.2d 30 (1977), the court has recognized that placing a defendant in a detrimental posture regarding the right to consider whether to enter into plea negotiations with the government is evidence of prejudice.[19] *See Yoon, supra* note 3, 594 A.2d at 1064, (error to fail to disclose defendant's failure to mention a gun in his pretrial statement to police). The court has held in the area of pretrial discovery that a misrepresentation by the government can result in substantial prejudice to the defense such as may warrant reversal of the conviction and a new trial. *See Rosser, supra* (misrepresentation by prosecutor that defendant's only statements had been oral and exculpatory); *Yoon, supra* note 3, 594 A.2d at 1064 (failure to disclose oral statement); *Wiggins, supra* note 3, 521 A.2d at 1147 (prosecutor did not bring altered bill to trial for defense counsel's inspection, although "it was understood" he would do so); *Smith, supra,* 491 A.2d at 1148 n. 7 (government failed to properly communicate the substance of appellant's incriminating admissions during pretrial discovery). *Cf. Santobello v. New York, supra,* 404 U.S. at 262, 92 S.Ct. at 499 ("when plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"). Because appellant's decision to go to trial—and thus not to enter into plea negotiations—could reasonably have been influenced by the government's pretrial assurances that it would not use his prior convictions to impeach him, appellant has demonstrated that the breach of that promise prejudiced him.

■ The government was aware that appellant's defense of innocent presence rested on his testimony and, in the face of the previous mistrial, can be deemed to know that the result of the second trial would turn on his credibility. The prosecutor, by breaching his promise, in effect "caught" appellant in the position of having gone to trial with the idea that he could testify without being impeached and not learning until mid-trial that he would face impeachment with highly prejudicial prior convictions if he testified. *See Rosser, supra,* 381 A.2d at 607 (prosecutor laid a trap for the defendant by withholding grand jury transcript until after the defendant had testified). Such impeachment could tip the scales against appellant in the credibility contest in the trial, and therefore, cause him to reevaluate whether he wanted to engage in plea negotiations. *See Smith, supra,* 491 A.2d at 1149. Although he protested his innocence at the first trial, with the change in government tactics at a

---

mid-trial breach of a promise by the government.

**19.** Under the circumstances presented to the trial judge, we are unpersuaded by the government's contention that appellant waived this claim. The prosecutor's mid-trial announcement came without forewarning to defense counsel, thereby placing counsel in the position of presenting objections for which counsel had no previous reason to prepare. *See McCall, supra,* 596 A.2d at 960 (dissenting opinion, Schwelb, J.) (plain error doctrine not devised for such a situation; "unreasonable, in my opinion, to fault counsel or to penalize his client because the attorney failed to assemble and enumerate all of the effective arguments available to him in a short sidebar conference with the judge"). *Cf. Doyle v. Ohio, supra,* 426 U.S. at 619 n. 10, 96 S.Ct. at 2245 n. 10 (noting the dissenting opinion relied on defendant's failure to offer reliance on *Miranda* warnings as a justification for his silence, the Court stated that "the error we perceive lies in the cross-examination on this question [of post-arrest silence], thereby implying an inconsistency that the jury might construe as evidence of guilt." Thus, "the unfairness occurs when the prosecution, in the presence of the jury, is allowed to undertake impeachment on the basis of what may be the exercise of that right [to remain silent].") Defense counsel's objections alerted the judge, who presided at both trials, to the nature of the prejudice, and thereby, to the possibility that appellant might have thought differently about going to trial had he known that he would be impeached with his prior convictions.

second trial, appellant was denied the opportunity to consider, prior to going to trial a second time, whether he wanted to risk another trial where he would be impeached (his defense effectively necessitated that he testify) and face a mandatory minimum sentence without first attempting to enter into plea negotiations with the government. The impact of impeachment was, particularly in view of the mistrial at the first trial, neither peripheral nor cumulative to the government's case. *See Rosser, supra,* 381 A.2d at 609. The government does not maintain that attempts to enter into plea negotiations would have been fruitless, and had appellant pleaded guilty to attempted distribution he would not have been subject to a mandatory minimum sentence.

Accordingly, because defense counsel reasonably relied on the prosecutor's pretrial assurances that appellant would not be impeached with his prior convictions if he testified at trial to the detriment of his exercise of peremptory challenges in selecting a jury and his evaluation of whether to go to trial, we reverse the judgment and remand the case for a new trial.