**Doc E. SIMMONS and Olivia B. Smallwood, Appellants,**

v.

**UNITED STATES, Appellee.**

**Nos. 04–CF–214, 04–CF–254.**

District of Columbia Court of Appeals.

Argued Jan. 12, 2006.
Decided Jan. 24, 2008.

---

Allie J. Sheffield for appellant Simmons.

Judith A. Lovelace for appellant Smallwood.

Thomas S. Rees, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and Thomas J. Tourish, Jr., and Priscilla Carroll, Assistant United States Attorneys, were on the brief, for appellee.

Before REID and GLICKMAN, Associate Judges, and SCHWELB, Senior Judge.*

GLICKMAN, Associate Judge:

Appellants Doc Simmons and Olivia Smallwood were tried together with a third co-defendant, Wally Smith, on charges of unlawful distribution of cocaine and unlawful possession with intent to distribute cocaine. The jury found Simmons guilty of distribution, not guilty of possession with intent to distribute, and guilty of the lesser included offense of simple possession of cocaine. Smallwood was convicted of distribution of cocaine. Smith was acquitted of all charges.

Simmons claims that his convictions should be reversed because (1) the government violated a pre-trial promise not to introduce so-called *Toliver*[1] evidence of uncharged contemporaneous drug sales, and (2) the prosecutor misstated the testimony of a defense witness in her closing and rebuttal arguments. Smallwood asserts that the evidence was insufficient to support her conviction for distribution of cocaine, because the key testimony against her was inherently incredible. Appellants' arguments do not persuade us, and we affirm their convictions.

## I.

According to the government's evidence at trial, at 6:00 p.m. on February 4, 2003, undercover Metropolitan Police Department Officers Thomas Stephenson and Anthony Greene drove to the 2700 block of Bruce Place, S.E., to conduct a "buy-bust" operation. Greene remained in their unmarked car as Stephenson, holding a prerecorded twenty-dollar bill in his hand, exited and approached Wally Smith. Stephenson testified that Smith asked him "what [he] was looking for." Stephenson replied that he wanted "two bags."

In response, Smith brought Stephenson across the street to meet Olivia Smallwood, who was standing in the walkway at 2726 Bruce Place. Smith asked Smallwood if she had "three bags." Smallwood did not have them but led Smith and Stephenson down the walkway, where she knocked on an apartment door. Doc Simmons opened the door and Stephenson, Smith, and Smallwood all went inside.

Several other persons were in the apartment, and Stephenson observed Simmons dispensing ziplock bags to them containing what appeared to be drugs. When it was his turn, Stephenson gave the pre-recorded twenty-dollar bill to Smith, who added ten dollars of his own and handed the money to Simmons. In return, Simmons gave Smith four small, pink ziplock plastic bags with a rocklike substance in them. Stephenson testified that Smith passed the four bags to Smallwood.

Smallwood then led Stephenson out of the apartment and handed him two of the ziplock bags. Smith soon followed them and rejoined Smallwood. With the two bags in his possession, Stephenson left and returned to his car, where his partner, Officer Greene, was awaiting him. Inside the car, Stephenson performed a field test, which indicated the presence of crack cocaine in the ziplock bags. Within minutes, a police arrest team, summoned by Greene, stopped Smallwood and Smith and brought Simmons out to the street. All three individuals were positively identified by Stephenson and placed under arrest.

From Simmons, the police recovered one small, pink ziplock bag containing crack

---

* Judge Schwelb was an Associate Judge of the Court at the time this case was argued. His status changed to that of Senior Judge on June 24, 2006.

1. *Toliver v. United States,* 468 A.2d 958 (D.C. 1983).

cocaine and $156 in cash, including the pre-recorded twenty dollar bill that Stephenson had used to make his undercover purchase. The police found no ziplock bags or drugs on Smallwood, even though no officer saw her throw anything away. Smith had no drugs in his possession either.

The defendants disputed Stephenson's account and presented a very different version of events at trial. After getting off work on February 4, 2003, Simmons testified, he bought a pizza to share with his fiancée, Sherita Hester. He also bought a single ziplock bag of crack cocaine for his own personal use. He then went to 2726 Bruce Place, where Hester was expecting him. Hester lived at that address with her mother, who sold "bootleg" beer, cigarettes and other articles (but not drugs) from their apartment.

Shortly after Simmons arrived at the apartment, Smallwood visited it to purchase some beer. According to Simmons and Hester, Smallwood entered alone, and they never saw Stephenson. Smallwood remained in the apartment for a little while, drinking beer and chatting. Other defense witnesses testified that Smallwood left the apartment by herself, holding a beer in her hand,[2] and that she did not throw anything down before she was arrested a few minutes later. Simmons and Hester were sitting at the dining room table, still eating their pizza, when the police entered to arrest Simmons.

Simmons denied selling drugs to Stephenson or anyone else. When asked by the prosecutor on cross-examination why he had the pre-recorded twenty dollar bill in his possession, Simmons replied that he did not know, but he might have received it when giving change to one of Hester's mother's customers.

## II.

■ The first basis on which Simmons seeks reversal of his convictions is that the government violated its representation to his counsel in pretrial discovery that it would not present evidence of any uncharged crimes. The violation occurred, but we conclude that Simmons suffered no prejudice as a result. Simmons therefore is not entitled to the relief he requests.

### A.

The issue arose during the direct examination of Officer Stephenson. The prosecutor asked Stephenson what he saw when he entered the apartment on Bruce Place with Smallwood and Smith. Stephenson answered that he observed Simmons "giving out some small ziplock bags with little small [sic], tan rock substances inside to the other people that were in front of me."

Simmons did not object to this testimony. On cross-examination, his counsel questioned Stephenson about his inability to describe the other persons he allegedly saw obtaining ziplock bags from Simmons and his failure to issue a lookout for any of them.

On the next morning of trial, Simmons objected to Stephenson's testimony regarding his sales of drugs to other purchasers. His counsel requested a mistrial or, alternatively, that the court strike the testimony and give a curative instruction, because the prosecutor handling pretrial discovery had told him that the government did not intend to introduce "other crimes evidence as defined by *Drew* or *Toliver*."[3] The prosecutor had promised to inform him in writing, defense counsel

---

**2.** During the government's case-in-chief, the officer who arrested Smallwood also testified that she was holding a beer.

**3.** While evidence of other crimes committed by an accused is not admissible to prove the accused's predisposition to commit the charged crime, such evidence may be admitted, subject to certain constraints, if offered for a substantial, legitimate purpose, such as to prove motive, intent, absence of mistake or accident, a common scheme or plan, or iden-

added, if the government's intentions were to change. Having "never received anything," counsel stated, he was surprised when Stephenson testified to having seen Simmons make other drug sales.

The trial judge denied Simmons's request for a mistrial or other relief on the ground that Simmons had not been prejudiced by the unexpected introduction of the challenged testimony (which, the judge, observed, was *Toliver* evidence rather than *Drew* evidence). Simmons's counsel then resumed his cross-examination of Stephenson, who reluctantly admitted that he did not mention any other drug sales by Simmons in his undercover buy report. "And the reason you didn't put it in there," counsel asked, was "because it didn't happen; is that right?" "It's because it wasn't important," Stephenson replied.

Later, at a break in the proceedings, there was renewed colloquy regarding Stephenson's testimony that Simmons sold drugs to others in the apartment. The trial judge observed that this testimony was "substantial independent proof" of the charge of possession with intent to distribute cocaine, because it strengthened the inference that Simmons had intended to distribute the remaining bag of cocaine

found on him when he was arrested. Simmons's counsel agreed that the testimony was "certainly classic *Toliver* evidence" and reiterated that its admission after the government said "it did not exist" had "substantially prejudiced" Simmons. The judge acknowledged "the discovery problem" but said that he still perceived no prejudice, particularly in view of defense counsel's effective cross-examination.

The matter did not end there. Two days later, at the close of the government's case-in-chief, the trial judge revisited the issue once more. Although he initially had doubted that Simmons was prejudiced,[4] the judge now had second thoughts. He asked the prosecutor whether Simmons's counsel had made a specific discovery request and been told that there would be no *Toliver* evidence. Not having handled the discovery herself, the prosecutor said she accepted defense counsel's representation. The prosecutor added that she first learned of the *Toliver* evidence on the eve of trial, because Stephenson had not been able to meet with her earlier.

Declaring that Stephenson's testimony about other drug sales "would be very powerfully incriminating if it were believed," the judge found that the government's failure to disclose it was "inadver-

---

tity. *Drew v. United States,* 118 U.S.App. D.C. 11, 16, 331 F.2d 85, 90 (1964); *see also Johnson v. United States,* 683 A.2d 1087, 1092 (D.C.1996) (en banc). We have identified three categories of other crimes evidence that are not subject to the *Drew* requirements for admissibility. "Specifically, *Drew* does not apply where such evidence is (1) direct and substantial proof of the charged crime, (2) closely intertwined with the evidence of the charged crime, or (3) necessary to place the charged crime in an understandable context." *Johnson,* 683 A.2d at 1098. The term *"Toliver* evidence" is sometimes used (more or less loosely) to refer to one or more of these latter categories of evidence. *See Toliver,* 468 A.2d at 961 (holding that "in cases where evidence of incidental, uncharged criminal conduct is

inextricably intertwined with evidence of the charged offense, evidence of the uncharged criminal conduct is directly admissible without the necessity of a cautionary *Drew* instruction [limiting the admissibility of the evidence to a particular purpose]").

4. "I didn't impose any [sanction]," the judge stated,

> because I didn't see the prejudice, particularly demonstrable prejudice. I didn't really think that the defense theory would have changed very much in this case.... I don't see how the defense investigation would have been altered one way or the other even had [the allegation of other drug sales] been disclosed....

tent" and "negligent" but not "willful and not an attempt to get some type of tactical advantage." Given the possible prejudice to the defense, the judge decided to strike the testimony and instruct the jury not to consider it. Simmons renewed his request for a mistrial, which the judge denied.

Accordingly, after hearing the defendants' motions for judgment of acquittal,[5] the judge instructed the jury as follows:

> I'm going to have to strike part of some testimony that you heard during the course of the trial.

> During the course of the trial, you heard ... Undercover Officer Stephenson testify that prior to the alleged sale in this case he observed what he believed to be prior sales by Mr. Simmons.

> Because it has now come to the Court's attention that the Government inadvertently failed to disclose this information to counsel for Mr. Simmons prior to the trial, I'm instructing you to disregard that portion of the undercover officer's testimony.

> So you cannot consider his testimony that there was a prior sale or sales before this alleged transaction in any way in determining the guilt or innocence of Mr. Simmons. And I will strike that testimony from the record.

**5.** In assessing the sufficiency of the government's evidence, the judge disregarded the testimony about Simmons's other drug sales.

**6.** Subsequently, in his closing argument, Simmons's counsel cited Stephenson's failure to mention other drug sales by Simmons in his undercover buy report as one reason "why you can't credit anything he says." The prosecutor did not object to that reference and did not advert to the struck testimony in her own closing remarks.

**7.** 606 A.2d 1017 (D.C.1992), *overruled in part on other grounds by Lyons v. United States,* 683 A.2d 1066, 1067 (D.C.1996) (en banc).

**8.** 606 A.2d at 1020 (citing, *inter alia, McCall v. United States,* 596 A.2d 948 (D.C.1991); *Yoon v. United States,* 594 A.2d 1056 (D.C.

No party objected to the wording of this instruction.[6]

### B.

In *Wilson v. United States,*[7] the prosecutor stated at a pretrial status conference that Wilson had no convictions with which he could be impeached. At trial, however, the court permitted the prosecutor, over defense objection, to impeach Wilson with two prior convictions for sex offenses. On appeal, this court reversed Wilson's conviction. "In a series of decisions," we explained,

> the court has concluded that a prosecutor's pretrial representation of the government's intention creates an obligation to inform the defense and the trial court of new information in a timely manner since the defense and the court are entitled to rely on the prosecutor's pretrial representation. Where the prosecutor fails to honor his or her pretrial obligation, and the defendant is prejudiced, the court has reversed the conviction and remanded the case for a new trial.[8]

We concluded that Wilson was prejudiced by the prosecutor's change of position in two respects: in exercising his peremptory challenges,[9] and in deciding whether to go to trial.[10]

1991); *Wiggins v. United States,* 521 A.2d 1146 (D.C.1987); *Arnold v. United States,* 511 A.2d 399 (D.C.1986); *Rosser v. United States,* 381 A.2d 598 (D.C.1977)).

**9.** "Because of the prosecutor's pretrial assurance," we reasoned, "appellant missed the opportunity to use his peremptory challenges with an eye toward excluding jurors who might be particularly incensed by the nature of appellant's prior convictions, for sodomy and indecent acts, even though the convictions were thirteen years old." 606 A.2d at 1025–26.

**10.** "Because appellant's decision to go to trial—and thus not to enter into plea negotiations—could reasonably have been influenced by the government's pretrial assurances that

■ Thus, "reversible error occurs when (1) the prosecutor makes a pretrial representation of the government's intention that creates an obligation to inform the defense and the trial court of new information in a timely manner, (2) the prosecutor fails to honor his or her pretrial obligation, and (3) the defendant is prejudiced."[11] In the case now before us, the first two elements are undisputed. The trial prosecutor did not contest Simmons's claim that her predecessor had said the government would not present *Drew* or *Toliver* evidence at trial without prior notice. The prosecutor then presented *Toliver* evidence, without notice to defense counsel, in the government's case-in-chief.

The issue is whether Simmons was prejudiced—whether, that is, he reasonably relied on the pretrial representation to his detriment, either at trial or in some other respect. Invoking the reasoning of our decision in *Wilson*, Simmons argues that he "suffered grave prejudice by never having the opportunity to make the fundamental decision of whether to go to trial or enter a plea bargain with the knowledge that the government would introduce evidence of other crimes against him."[12]

Simmons overlooks a salient difference between this case and *Wilson*, however. Unlike in *Wilson*, the trial judge in this case undertook to enforce the expectation generated by the government's pretrial representation. The judge did so by striking the *Toliver* evidence and instructing the jury to disregard it. If the instruction was efficacious, Simmons got what he expected when he decided to go to trial rather than plead guilty—a trial in which other crimes evidence was excluded—and he suffered no prejudice from relying on what the prosecutor had told him.

As we often have said, echoing the Supreme Court, it is "the almost invariable assumption of the law that jurors follow their instructions."[13] We have assumed this in other cases in which jurors were instructed to disregard references to past criminal activity on the part of the defendant.[14] In the present case, we think that assumption remains valid. We cannot know, of course, whether the instruction to disregard the *Toliver* evidence actually affected the outcome of the trial, for we cannot enter the jurors' minds. It is enough if we can say with high confidence that the purpose of the instruction was achieved because (for whatever reason) the jury did not rely on the *Toliver* evidence in reaching its verdict. That is something we can say.

Stephenson's testimony regarding Simmons's other drug sales was potentially

---

it would not use his prior convictions to impeach him, appellant has demonstrated that the breach of that promise prejudiced him." *Id.* at 1026. Although Wilson had not claimed this type of prejudice when he asserted his objections in the trial court, we held that he had not waived the claim. *Id.* at 1026 n. 19.

**11.** *Bellamy v. United States*, 810 A.2d 401, 404 (D.C.2002) (quoting *Wilson*, 606 A.2d at 1020) (internal quotation marks and brackets omitted).

**12.** Simmons does not argue that he was prejudiced in any other respect. For example, he does not contend that his trial counsel was unprepared to meet the force of Stephenson's unexpected testimony.

**13.** *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *see, e.g., Coleman v. United States*, 779 A.2d 297, 303 (D.C.2001); *Plater v. United States*, 745 A.2d 953, 959 (D.C.2000).

**14.** *See, e.g., Dorsey v. United States*, 935 A.2d 288, 293 (D.C.2007); *Reams v. United States*, 895 A.2d 914, 924 (D.C.2006); *Metts v. United States*, 877 A.2d 113, 118 (D.C.2005); *see also Coleman*, 779 A.2d at 306 (holding that, in rare cases, a curative instruction may need to be given immediately in order to avoid jury misuse of improperly admitted evidence).

probative of the charge of possession with intent to distribute cocaine, as the trial judge recognized. But the *Toliver* evidence clearly did not affect the jury's verdict on that charge, because the jury acquitted Simmons of the offense. Conversely, the *Toliver* evidence was not probative, but rather was superfluous, with respect to the two charges of which the jury convicted Simmons. The offense of distribution of cocaine was established by the evidence that Simmons sold the drug to Stephenson, whose report of that sale was not made any more credible by his uncorroborated testimony that Simmons also dispensed cocaine to other persons. And the offense of simple possession of cocaine (a lesser included offense of possession with intent to distribute) was established by the single ziplock bag found on Simmons when he was arrested. Each offense, in other words, was proved by substantial evidence that was independent of the *Toliver* evidence. We cannot imagine that the *Toliver* evidence influenced the jury to return a guilty verdict on either count.

In sum, the trial judge excluded the *Toliver* evidence and the jury did not rely on it. Consequently, the government's breach of its promise not to present *Toliver* evidence did not prejudice Simmons and does not entitle him to relief.

### III.

 Simmons's second claim is that his convictions should be reversed because the prosecutor repeatedly misstated a defense witness's testimony, and the trial judge's corrective instruction was inadequate to avoid the resulting prejudice. We agree that the prosecutor's comments were improper. However, as Simmons did not object to the judge's corrective instruction or seek other relief, his claim is "sub-

ject to the rigors of plain error review." [15] The claim does not survive our scrutiny.

### A.

Sherita Hester insisted on cross-examination that she "knew" Simmons bought only a single ziplock bag of cocaine on the day of his arrest. Hester also testified that she was not with Simmons when he made the purchase. She did not explain how she knew how much cocaine Simmons had bought.

In her closing argument, the prosecutor incorrectly stated that Hester "sat up on the stand and said I know that" Simmons bought only one "zip" of cocaine "because I was with him when he bought it. That is what she told you." Recalling Simmons's testimony to the contrary, the prosecutor asked, "how is she with him if she's waiting at home on the pizza?" This was a "tremendous discrepancy in their testimony," the prosecutor argued, that the jury "should use ... to evaluate the credibility of what they're trying to get you to believe...."

There was no immediate objection to the prosecutor's misstatement of Hester's testimony. In his closing argument, Simmons's counsel attempted to correct the error by saying, "I don't think Ms. Hester ... ever said that she ... went with Mr. Simmons to get the drugs that he had.... She said she was at home waiting for the pizza to come." "You resolve that in your own mind," Simmons's counsel told the jury; "your recollection controls...."

In rebuttal, the prosecutor repeated her erroneous assertion that Hester's testimony "was in direct conflict" with that of Simmons. According to the prosecutor, "when I asked her how many bags did he purchase ... she said one. And I said how do you know that. And she said because she was with him." Continuing

---

15. *Thomas v. United States,* 914 A.2d 1, 6 (D.C.2006).

her attack on Hester's credibility, the prosecutor said, "let's talk about bias. Let's talk about the fiancée of Mr. Simmons coming in here and saying yes, I was with him when he bought that one zip. And think about everything else—"

At this point, Simmons's counsel objected that Hester "never said that. I mean it's one thing to just say it once but to keep saying it, it's just not true." The judge immediately instructed the jury as follows:

> Ladies and gentlemen, it is your recollection that controls with respect to the testimony. And I don't have a transcript. I was looking in my notes and obviously the parties disagree about whether or not she, Ms. Hester, actually said she was with him or how she even knew that he had purchased one. It's your recollection that controls.
>
> So let's move on.

Simmons's counsel did not object to this instruction, ask for a mistrial, or seek other relief. The prosecutor resumed her rebuttal argument, saying nothing more about Hester. In his final charge to the jury, the judge reiterated that "[i]f ... the lawyers have ever made any reference to the evidence that does not coincide with your memory of the evidence it is always your memory which should control during your deliberations." When asked if he was satisfied with the judge's closing instructions, defense counsel made no request for the jury to be given further guidance.

## B.

■ We begin our evaluation of Simmons's claim by considering whether the challenged comments of the prosecutor were improper. "If they were, we must determine whether the trial judge erred or abused his discretion in responding to them," taking into account "the context in which the comments were made, the gravity of the impropriety, its relationship to the issue of guilt, the effect of any corrective action taken by the judge, and the strength of the government's case."[16] As we have explained, although an appellant's complaint may be directed at the prosecutor,

> it is our function to review the record for legal error or abuse of discretion by the trial judge, not by counsel. Such error or abuse may, to be sure, embrace not only incorrect rulings but also, on occasion, failure to intervene *sua sponte* when such intervention is called for, or to react with sufficient promptness and vigor to prosecutorial misdeeds. Nonetheless, absent some improper ruling or omission by the trial judge, we cannot ordinarily reverse a conviction, and our ultimate focus must therefore be on what the judge did or failed to do.[17]

Accordingly, if the judge's response was deficient and an objection was preserved, we will reverse unless we are convinced that the appellant was not substantially prejudiced by the prosecutor's improper comments.[18] "On the other hand, if the

---

16. *Finch v. United States*, 867 A.2d 222, 225–26 (D.C.2005).

17. *Irick v. United States*, 565 A.2d 26, 33 (D.C.1989) (citations and footnote omitted).

18. The settled test for determining "substantial prejudice" is
> whether we can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substan-

tially swayed by the error." The decisive factors are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error.

*McGrier v. United States*, 597 A.2d 36, 41 (D.C.1991) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557, (1946), and *Gaither v. United States*, 134 U.S.App. D.C. 154, 172, 413 F.2d 1061, 1079 (1969)).

appellant failed to make a timely objection to the improper comments or the trial judge's ruling thereon, the appellant must establish 'plain error' in order to secure a reversal." [19]

■ Simmons objected to the prosecutor's comments, but not to the trial judge's curative instruction. Therefore, as in *Long*, [20] we review his contention only for plain error, which requires the appellant to show that (1) the judge erred (or abused his discretion); (2) the error was clear or obvious; and (3) it affected the appellant's substantial rights. [21] "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." [22] "Under the plain error standard, 'reversal of a conviction' based on improper prosecutorial argument is appropriate only in a 'particularly egregious' case, when 'a miscarriage of justice would otherwise result.' " [23]

■ Turning to the threshold question, Hester testified unequivocally that she was *not* present when Simmons allegedly purchased one ziplock bag of cocaine for his own consumption. Yet in her closing and rebuttal arguments, the prosecutor repeatedly asserted that Hester had claimed she *was* present. Unquestionably, these flat misstatements of Hester's testimony were improper. As we said in *Anthony*, [24] "[i]t is incumbent upon the prosecutor 'to take care to *ensure* that statements made in opening and closing arguments are supported by evidence introduced at trial.' " [25] It is "the obligation of the prosecutor to avoid making statements of fact to the jury not supported by proper evidence introduced during trial." [26] Whether or not the prosecutor acted in good faith, she "had an obligation to know, and she should have known, that her description of [Hester's] testimony was untrue." [27] Needless to add, the prosecutor's arguments based on her misrepresentation of Hester's testimony were equally inappropriate; "[i]t is improper for an attorney to make an argument to the jury based on facts not in evidence or not reasonably inferable from the evidence." [28]

■ "Obviously, not every misstatement by a prosecutor warrants judicial intervention, nor is a mistrial or reversal of a conviction always required." [29] The question of what, if any, remedial action is appropriate is committed to the trial judge's discretion. The judge "has latitude in regulating closing argument, and we do not lightly overturn [his] discretion-

**19.** *Finch,* 867 A.2d at 226.

**20.** *Long v. United States,* 910 A.2d 298, 305 (D.C.2006).

**21.** *Thomas,* 914 A.2d at 8, 20.

**22.** *Id.* at 8 (quoting *Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).

**23.** *Long,* 910 A.2d at 305 (quoting *McGrier,* 597 A.2d at 41, and *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

**24.** *Anthony v. United States,* 935 A.2d 275, 284 (D.C.2007).

**25.** *Id.* at 284 (quoting *United States v. Small,* 316 U.S.App. D.C. 15, 19, 74 F.3d 1276, 1280 (1996)).

**26.** *Id.* at 283 (quoting *Gaither,* 134 U.S.App. D.C. at 172, 413 F.2d at 1079).

**27.** *Id.* at 284.

**28.** *Morrison v. United States,* 547 A.2d 996, 999 (D.C.1988).

**29.** *Anthony,* 935 A.2d at 286 (citations omitted).

ary rulings."[30] In this case, immediately after Simmons objected to the prosecutor's misstatements, the judge exercised his discretion by instructing the jury (1) that the parties disagreed about what Hester had said; (2) that the judge did not have a transcript of Hester's testimony and (implicitly) could not resolve the parties' disagreement from his notes and memory; and (3) that the jurors should rely on their own recollections of Hester's testimony. Although Simmons expressed no dissatisfaction with this corrective instruction in the trial court, he argues now that it was insufficient and that "[n]othing short of an admonition from the trial court that the jury should disregard the prosecutor's improper argument would have cured the prejudice."

■■■ The "standard judicial caution that the jury's recollection controls" is not "a cure-all" for every misstatement of evidence in closing argument, no matter how flagrant.[31] In *Anthony,* for instance, the prosecutor's mischaracterization of a crucial defense witness's exculpatory testimony went to "the very heart of the case" and buttressed an otherwise "not especially compelling" government presentation.[32] Because "the question whether the prosecutor's representation was true or false [was] of such potentially dispositive consequence,"[33] we held that the trial judge committed reversible error by merely instructing the jury that its recollection would control. Given the significance of the testimony in dispute, we held that the judge should have countenanced a brief interruption of the prosecutor's argument and consequent delay of the trial in order to consult the court reporter and ascertain what the defense witness actually had said. We also reversed a conviction in *Lewis,*[34] finding the standard cautionary instruction inadequate where the prosecutor's several misstatements "related directly to the issue of appellant's guilt and bolstered what was otherwise a relatively weak and wholly circumstantial government case."[35] On the other hand, we have recognized that the standard cautionary instruction might be a sufficient judicial response to misstatements of evidence in less egregious circumstances.[36]

*Anthony* suggests that the trial judge in the present case could have consulted the court reporter to resolve the conflict over Hester's actual testimony. Upon learning the truth, the judge could have directed the jury to disregard the prosecutor's improper argument, as Simmons proposes, or allowed the prosecutor to correct her misstatements herself.[37]

Nonetheless, it is difficult for us to conclude either that the judge committed a clear abuse of discretion, or (assuming such error) that the prosecutor's improper argument substantially prejudiced Simmons. Simmons's counsel corrected the prosecutor's misstatements in his closing argument, and his forceful objection to the prosecutor's rebuttal comments reinforced the point. The jury thus was reminded of what Hester actually had said. (Furthermore, as the government points out, the jurors were permitted to take their own notes during the trial.) And defense coun-

---

30. *Clayborne v. United States,* 751 A.2d 956, 968 (D.C.2000).

31. *Anthony,* 935 A.2d at 284 (quoting *Gaither,* 134 U.S.App. D.C. at 172, 413 F.2d at 1079).

32. *Id.* at 285.

33. *Id.* at 287.

34. *Lewis v. United States,* 541 A.2d 145 (D.C. 1988).

35. *Id.* at 148.

36. *See Anthony,* 935 A.2d at 288.

37. *Id.* at 287.

sel was seemingly content with the judge's ameliorative admonition. Counsel did not ask the judge to consult the court reporter or to instruct the jury to disregard the prosecutor's misstatements. "The decision by [Simmons's] attorney to let the case go to the jury, without first requesting corrective remedial action which might well have been available, significantly blunts the force of [Simmons's] contentions on appeal." [38]

It is true that the prosecutor's repeated misstatements improperly attacked Hester's credibility and, by extension, the credibility of Simmons's claim of innocence. We do not minimize the gravity of the impropriety, even assuming that it was inadvertent. But we must consider also the strength of the government's case and the value of Hester's testimony to the defense. This was not "a relatively weak and wholly circumstantial case," [39] or a case that "turned largely on the credibility of the witnesses." [40] Officer Stephenson's testimony incriminating Simmons was important, but it was corroborated, most notably, by the physical evidence recovered from Simmons only minutes after the undercover buy was completed—the pre-recorded twenty dollar bill and the small, pink ziplock bag of cocaine (which looked like the two small, pink ziplocks that Stephenson bought). In addition, whether Hester accompanied Simmons when he bought the cocaine was not central to his defense and did not bear directly on his guilt.[41] Hester's actual testimony, that she was not with Simmons, was not exculpatory (unlike the testimony at issue in

*Anthony,* for example). Indeed, her actual testimony on the point was unhelpful to Simmons's defense, because it left unexplained how Hester "knew" that he had only one bag of cocaine when he came to her apartment. And, while Hester supported Simmons's denial of any drug dealing, her bias as his fiancée was apparent. She (like Simmons) could not reconcile her version of the facts with Stephenson's testimony or with Simmons's possession of the pre-recorded twenty dollar bill. Thus, Hester's credibility and that of the defense were already suspect, irrespective of the prosecutor's mischaracterization of her testimony.

In short, the misstated testimony in this case was not as significant as that in *Anthony* or in *Lewis.* Hester's actual testimony did not refute the government's case, which was strong. And Simmons did not object to the judge's corrective instruction or ask that the court reporter be consulted. In view of those facts, we conclude that Simmons has not carried his burden of showing plain error in the judge's response to his objection to the prosecutor's improper argument. We cannot reverse his convictions on that ground.

## IV.

In evaluating Smallwood's claim that there was insufficient evidence to convict her of distributing cocaine, we "must review the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifi-

---

38. *Lee v. United States,* 668 A.2d 822, 832 (D.C.1995) (declining to set aside conviction on account of prosecutor's serious misstatement of evidence in rebuttal argument, to which the defendant objected, even though "the government's evidence was not overwhelming").

39. *Lewis,* 541 A.2d at 148.

40. *Anthony,* 935 A.2d at 285 (quoting *Lee,* 668 A.2d at 832).

41. It is worth noting that Simmons's counsel did not even ask Hester in her direct examination about Simmons's purchase or possession of cocaine. The subject was first raised, without objection, by the prosecutor in cross-examination.

able inferences of fact, and making no distinction between direct and circumstantial evidence."[42] The jury evidently credited Officer Stephenson's testimony that Smallwood knowingly facilitated and participated in the distribution of cocaine by leading Stephenson to Simmons, receiving the cocaine from Simmons via Smith, and physically handing the cocaine over to Stephenson to complete the transaction.

Smallwood argues that Stephenson's testimony was inherently incredible, because he reported that she kept two of the four ziplock bags she received from Smith, yet no ziplocks were found on her person when she was arrested and no one saw her dispose of any ziplocks. "To have reached its guilty verdict in this Case of the Vanishing Ziplocks," Smallwood colorfully asserts, "the jury would have had to go beyond even conjecture and speculation and conclude that tangible objects are capable of vanishing into thin air, in defiance of the law of physics."

We are not persuaded. The seeming inconsistency of the "vanishing ziplocks" did not render the remainder of Stephenson's testimony about Smallwood inherently incredible.[43] Such inconsistencies are routine grist for the jury's mill.[44] Smallwood's main argument, that "[n]o rational jury could have believed Officer Stephenson's story about [her] participation in the drug sale without believing all of it, four ziplocks included,"[45] is legally and factually incorrect. "It is axiomatic, that as assessors of a witness' credibility, the jury is always free to accept parts of a witness' testimony and reject other parts."[46] From the fact that two ziplocks were missing, the jury reasonably could have inferred that Stephenson was simply mistaken when he said that Smith handed four ziplocks to Smallwood, and it still could have credited the balance of his testimony. Alternatively, the jury could have believed Stephenson's account in its entirety and inferred that Smallwood furtively discarded or hid the two small ziplock bags she had retained, without anyone noticing.

## V.

For the foregoing reasons, we affirm appellants' convictions.

very stringent test which has been met in only a tiny number of cases, of which the twenty-year-old *Jackson* case is one of the most recent." *In re A.H.B.*, 491 A.2d 490, 496 (D.C. 1985) (quoting *Jackson v. United States*, 122 U.S.App. D.C. 324, 329, 353 F.2d 862, 867 (1965)).

---

**42.** *Curry v. United States*, 520 A.2d 255, 263 (D.C.1987).

**43.** "The doctrine of inherent incredibility can be invoked only when the testimony can be 'disprove[d] ... as a matter of logic by the uncontradicted facts or by scientific evidence,' or when 'the person whose testimony is under scrutiny made allegations which seem highly questionable in the light of common experience and knowledge, or behaved in a manner strongly at variance with the way in which we would normally expect a similarly situated person to behave.' ... This is a

**44.** *See A.H.B.*, 491 A.2d at 495–96.

**45.** Appellant Smallwood's Brief at 8.

**46.** *Payne v. United States*, 516 A.2d 484, 495 (D.C.1986).